COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-237-CR
 
 
TOMMY 
EUGENE DOTSON                                                     APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        Appellant 
Tommy Eugene Dotson appeals his conviction for manslaughter. A jury found Dotson 
guilty of recklessly causing the death of Lori Sitko, and the trial court 
sentenced him to forty years’ imprisonment and made an affirmative deadly 
weapon finding. Dotson raises ten issues on appeal. We will affirm.
II. Factual and 
Procedural Background
        On 
November 24, 2001, Dotson’s recreational vehicle (“RV”) was parked with 
its back end up against a building in a dirt lot located between the 3200 blocks 
of East Belknap and Race Street in Fort Worth, Texas.  At approximately 
4:00 p.m., Lori Sitko and Jeffrey Adkins, two homeless individuals, were walking 
towards downtown on Belknap Street when Sitko picked up a stick and went to the 
dirt lot where Dotson’s RV was parked.  According to Adkins, Sitko began 
waiving the stick in the air, but did not appear angry or upset and had not 
reached the RV when Dotson turned on the engine and started moving towards 
her.  Dotson swerved slightly in Sitko’s direction, hitting Sitko and 
causing her to fall under the RV.  Without braking, Dotson then turned the 
RV’s wheels to the right, running over Sitko’s body with the driver’s side 
tires and proceeding to exit the parking lot. Adkins testified that Dotson never 
stopped or hesitated once he made impact with Sitko’s body, “[h]e just kept 
running over her.”  Dotson then quickly fled the scene.  Sitko died 
as the result of injuries sustained from the collision.
        A 
short time later, after receiving a description of the RV and the license plate 
number from witnesses, the police located Dotson’s RV parked behind a nearby 
bar.  Dotson was subsequently arrested and taken to John Peter Smith 
Hospital for a blood test, which revealed that Dotson’s blood alcohol content 
was over two-and-a-half times the legal limit.  Thereafter, during the 
course of investigating the incident involving Dotson and Sitko, the police 
discovered that Dotson and Sitko knew each other and that there was a history of 
violent behavior between the two of them.  The State charged Dotson with 
the offense of murder.
        At 
trial, Dotson never disputed that he struck and killed Sitko with his RV.  
But, he raised the defenses of self-defense and necessity, and the trial court 
charged the jury on both defensive theories.  In addition, the trial court 
charged the jury on the offense of murder as alleged in the indictment and the 
lesser included offense of manslaughter.  The jury ultimately found Dotson 
guilty of the offense of manslaughter.  During punishment, Dotson pled 
“true” to the repeat offender allegation in the indictment, and the trial 
court sentenced him to forty years’ imprisonment and made an affirmative 
deadly weapon finding.  This appeal followed.
III. 
Sufficiency of the Evidence
        In 
his first two points, Dotson contends that the evidence is legally and factually 
insufficient to support his conviction for manslaughter because the evidence 
demonstrates that Dotson acted out of justified necessity and self-defense when 
he struck and killed Sitko with his R.V.[1]  The 
State, however, maintains that the evidence is both legally and factually 
sufficient to support the jury’s rejection of Dotson’s defensive theories 
and to sustain his conviction for manslaughter.
        A. Standard of Review and Applicable Law
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v. State, 55 
S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to 
the responsibility of the trier of fact to resolve conflicts in the testimony, 
to weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  When 
performing a legal sufficiency review, we may not sit as a thirteenth juror, 
re-evaluating the weight and credibility of the evidence and, thus, substituting 
our judgment for that of the fact finder.  Dewberry v. State, 4 
S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).
        After 
the defendant has introduced some evidence of a defense, the State bears the 
burden of persuasion to disprove it.  Zuliani v. State, 97 S.W.3d 
589, 594 (Tex. Crim. App. 2003); Saxton v. State, 804 S.W.2d 910, 913-14 
(Tex. Crim. App. 1991).  This burden does not require the State to 
introduce evidence disproving the defense, rather it requires the State to prove 
its case beyond a reasonable doubt.  Zuliani, 97 S.W.3d at 594; Saxton, 
804 S.W.2d at 913.  To determine sufficiency of the evidence to disprove a 
nonaffirmative defense, the appellate court asks whether, after viewing all the 
evidence in the light most favorable to the prosecution, any rational trier of 
fact would have found the essential elements of the offense beyond a reasonable 
doubt and also would have found against appellant on the defensive issue beyond 
a reasonable doubt.  Saxton, 804 S.W.2d at 914.
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party.  See 
Zuniga v. State, No. 539-02, 2004 WL 840786, at *4 (Tex. Crim. App. Apr. 21, 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt. Id. at 
*7.  There are two ways evidence may be factually insufficient: (1) the 
evidence supporting the verdict or judgment, considered by itself, is too weak 
to support the finding of guilt beyond a reasonable doubt; or (2) when there is 
evidence both supporting and contradicting the verdict or judgment, weighing all 
of the evidence, the contrary evidence is so strong that guilt cannot be proven 
beyond a reasonable doubt.  Id.  “This standard acknowledges 
that evidence of guilt can ‘preponderate’ in favor of conviction but still 
be insufficient to prove the elements of the crime beyond a reasonable 
doubt.”  Id.  In other words, evidence supporting a guilty 
finding can outweigh the contrary proof but still be insufficient to prove the 
elements of an offense beyond a reasonable doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at *4; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder. Zuniga, 2004 WL 840786, at *4.  A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at *7, 9.  An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 
603 (Tex. Crim. App. 2003).
        When 
a defendant challenges the factual sufficiency of the rejection of a defense, 
the reviewing court employs the same standard of review articulated in Zuniga 
because once the defendant has met his or her burden of production of evidence 
as to a defense, the State bears the burden to prove appellant’s guilt of the 
charged offense beyond a reasonable doubt. See Zuniga, 2004 WL 840786, at 
*7; Zuliani, 97 S.W.2d at 595.  A guilty finding is an implicit 
rejection of the defense. Zuliani, 97 S.W.3d at 594.
        Under 
Texas law, a person commits the offense of manslaughter “if he recklessly 
causes the death of an individual.” Tex. Penal Code Ann. § 19.04(a) (Vernon 
2003).  “A person acts recklessly, or is reckless, with respect to 
circumstances surrounding his conduct or the result of his conduct when he is 
aware of but consciously disregards a substantial and unjustifiable risk that 
the circumstances exist or the result will occur.”  Id. § 
6.03(c).  Culpable mental state is generally proven through circumstantial 
evidence.  See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 
[Panel Op.] 1978).
        Nonetheless, 
it is a defense to prosecution if the conduct in question is justified based on 
necessity.  See Tex. Penal 
Code Ann. §§ 9.02, 9.22.  Conduct is justified under the defense 
of necessity if (1) the defendant reasonably believed his or her conduct was 
immediately necessary to avoid imminent harm; (2) the desirability and urgency 
of avoiding the harm clearly outweighed, according to ordinary standards of 
reasonableness, the harm sought to be prevented by the law proscribing the 
conduct; and (3) a legislative purpose to exclude the justification claimed for 
the conduct does not otherwise plainly appear.  Id. § 9.22.  
The rationale of this defense is that “even though he has done the act the 
crime requires and has the mental state which the crime requires, his conduct 
which violates the literal language of the criminal law is justified because he 
has thereby avoided a harm of greater magnitude.”  Arnwine v. State, 
20 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, no pet.) (quoting Alford v. 
State, 866 S.W.2d 619, 624 n.9 (Tex. Crim. App.1993)).
        Self-defense 
also serves as a justification excluding criminal responsibility for otherwise 
criminal behavior. Tex. Penal Code Ann. § 9.31.  
Texas law provides that
  
[a] person is justified in using deadly force against another:
 
(1) 
if he would be justified in using force against the other under Section 9.31 
[i.e., when and to the degree he reasonably believes the force is immediately 
necessary to protect himself against the other’s use or attempted use of 
unlawful force];
 
(2) 
if a reasonable person in the actor’s situation would not have retreated; and
 
(3) 
when and to the degree he reasonably believes the deadly force is immediately 
necessary:
 
(A) 
to protect himself against the other’s use or attempted use of unlawful deadly 
force; or
 
(B) 
to prevent the other’s imminent commission of aggravated kidnapping, murder, 
sexual assault, aggravated sexual assault, robbery, or aggravated robbery.
 
Id. § 9.32(a); see also id. § 9.31.
 
B. Legally and Factually Sufficient Evidence Exists to Support Jury’s 
Rejection of Dotson’s Defensive Theories and to Sustain His Conviction for 
Manslaughter
        The 
evidence reflects that Dotson and Sitko knew each other because both individuals 
frequented the “Riverside area” of Fort Worth.  Dotson lived out of his 
RV, while Sitko slept on the street with other homeless individuals.  
Because Dotson suffered from a debilitating foot condition, he often used 
crutches to get around. He also only wore one lens in his eyeglasses because he 
had a cloudy eye.
        A 
short time before Sitko’s death, Dotson became angry with Sitko over money and 
told several acquaintances that he was going to kill Sitko.  On the evening 
of November 22, 2001, both Dotson and Sitko went to the Vaquero Orlando 
bar.  According to Leonard Cullop, another homeless individual at the bar, 
Sitko walked passed Dotson that evening and picked up a twenty dollar bill that 
was laying on his table.  As Sitko walked away, Dotson stood up, approached 
Sitko, and punched her in the face, knocking her to the floor.  Cullop 
testified that Dotson was immediately escorted out of the bar, screaming 
“I’m going to kill the fucking bitch.”
        The 
following day, Harvey Passwater, a friend of Sitko’s, noticed that Sitko had a 
bruised eye and asked where she had gotten the bruise.  When Passwater 
discovered that Dotson had struck Sitko in the face, he and Sitko went to 
Dotson’s RV to confront him.  Passwater testified that when he and Sitko 
got to Dotson’s RV, he entered the RV and punched Dotson in the face numerous 
times until Sitko convinced him to stop.  After Passwater and Sitko left 
the RV, Dotson called 911 to report the incident. Rick Benson, a Fort Worth 
Police Officer, was dispatched to Dotson’s RV to investigate.  According 
to Officer Benson, Dotson’s glasses appeared “tilted and bent” and Dotson 
had a small amount of blood on one side of his face.  But, Officer Benson 
testified that he did not see injuries justifying more than a citation to 
Passwater.
        Less 
than twenty-four hours later, Dotson struck and killed Sitko with his RV.  
Joel Luna witnessed most of the incident involving Dotson and Sitko while eating 
with his family at a Jack-In-The-Box across the street from the dirt lot.  
According to Luna, as he drove towards the Jack-In-The-Box, he noticed Sitko 
walking down the road and made a comment to his family about the boots that she 
was wearing. After Luna and his family entered the Jack-In-The-Box and ordered 
food, they sat at a table next to a window facing towards the dirt lot where 
Dotson’s RV was parked.  A couple of minutes later, Luna’s son 
exclaimed, “Daddy, look.  They have just hit that lady, the one that was 
walking down the street.”  Luna immediately turned, looked out the 
window, and saw Sitko “bouncing back and forth” on the dirt underneath 
Dotson’s RV.  According to Luna, Dotson then ran over Sitko with his rear 
tires and exited the dirt lot without ever stopping the vehicle.  After the 
RV pulled onto the street, Luna saw Dotson “turning around” as if he was 
“looking to see if somebody had seen what he just had done.”  When 
Dotson began driving away from the scene, Luna immediately told his wife to call 
the police, ran to his vehicle, and began following the RV.  During this 
time, Luna was never able to get directly beside the RV; however, he was able to 
see Dotson’s face in the driver’s side mirror and to write down the RV’s 
license plate number before returning to the scene.  After Dotson was 
apprehended, Luna positively identified Dotson as the person that ran over 
Sitko.
        Detective 
Ray Wangler, an accident reconstructionist for the Fort Worth Police Department, 
testified that the distance from Sitko’s body to the building that Dotson’s 
RV was parked in front of was sixty feet.[2]  
Detective Wangler, however, could not determine the exact point of impact 
because there was no indication that Dotson ever attempted to brake or to stop 
the vehicle. Detective Wangler testified that when he surveyed the lot where the 
collision occurred, there were no skid marks, scratches on the pavement, or any 
other marks in the parking lot that could be attributed to Dotson’s RV.  
But, according to Detective Wangler, based on the location and the direction of 
Sitko’s body and the location of a purse that Sitko was carrying at the time 
of the collision, he believed that Dotson could have driven out of the parking 
lot without striking Sitko.
        As 
a result of the collision, Sitko suffered numerous abrasions, including “a 
gliding abrasion” on the left side of her body from sliding across a rough 
surface.  According to Gary Sisler, the medical examiner who examined 
Sitko, Sitko’s injuries indicated that she was hit above the center of 
gravity.  He testified that there was no indication that the vehicle 
attempted to stop because there were no injuries to Sitko’s lower 
extremities.  Sisler also testified that Sitko’s fatal injury was “an 
atlanto-occipital fracture dislocation,” resulting when the base of the skull 
separates from the first cervical vertebral body causing bruising to the spinal 
cord.  Sitko’s autopsy also revealed her blood alcohol level was 
approximately four times the legal limit at the time of her death.
        Billy 
Walker, a fellow inmate of Dotson’s, testified that he and Dotson discussed 
the circumstances surrounding Sitko’s death and the potential charges against 
Dotson numerous times while in the Tarrant County Jail.  According to 
Walker, Dotson told him that when he saw Sitko coming towards his RV with a 
stick, “he dropped it in low and gunned it,” and thereafter, “he could 
feel the vehicle run over [Sitko] with his dooleys.”  Dotson also told 
Walker that he ran over Sitko to prevent her from breaking his windshield 
because it had been broken in the past and had cost him $400 in repairs.  
Walker testified that Dotson indicated that he and Sitko had argued shortly 
before the incident because she had run off with his money.  During their 
conversations, Dotson never expressed to Walker that the incident involving 
Sitko was accidental or unintentional.  In fact, according to Walker, 
Dotson “acted nonchalant” about the incident and “acted like it was no big 
deal because [Sitko] was a homeless person.”  In addition, Walker 
testified that Dotson told him that he believed he would only be charged with 
manslaughter and that he would probably only receive a five-year sentence based 
on the incident because the only witnesses were other homeless individuals.
        On 
appeal, Dotson argues that he proved beyond a reasonable doubt that he acted out 
of justified necessity and self-defense in running over Sitko with his RV.  
Despite Dotson’s argument, the trier of fact, as the exclusive judge of the 
weight and credibility of witnesses’ testimony, was free to accept or to 
reject all or part of the defensive evidence.  See Saxton, 804 
S.W.3d at 914. In the instant case, the jury obviously did not believe that 
Dotson was justified by either necessity or self-defense when he struck and 
killed Sitko with his RV.
        After 
examining all of the evidence in the light most favorable to the verdict, we 
conclude that a rational trier of fact could have found the essential elements 
of manslaughter beyond a reasonable doubt and also could have found against 
Dotson on both the necessity and self-defense issues beyond a reasonable 
doubt.  Furthermore, viewing all the evidence in a neutral light, favoring 
neither party, we also conclude that the evidence supporting the verdict, taken 
alone, is not too weak to support the finding of guilt beyond a reasonable doubt 
and that the contrary evidence is not so strong that guilt cannot be proven 
beyond a reasonable doubt.  Accordingly, we hold that the evidence is both 
legally and factually sufficient to support the jury’s implicit rejection of 
Dotson’s defensive theories and to sustain his conviction for 
manslaughter.  We overrule Dotson’s first and second points.
IV. Billy 
Walker’s Testimony
        In 
his third point, Dotson contends that the trial court abused its discretion by 
overruling his objections to Walker’s testimony because Walker deliberately 
elicited incriminating statements from Dotson as an agent of the State in 
violation of his Sixth Amendment right to counsel.  The State maintains 
that the admission of Walker’s testimony was proper because Walker did not act 
as a state agent during his conversations with Dotson.
        At 
trial, shortly after the State commenced its examination of Walker, Dotson moved 
for a hearing outside the presence of the jury to determine whether Walker was 
“working with the police department in talking to [Dotson] in the jail after 
he was charged.”  After hearing evidence and argument regarding the 
admissibility of Walker’s testimony, the trial court overruled Dotson’s 
objections and permitted him to testify in front of the jury.[3]  
But, in the court’s charge, the jury was instructed not to consider any 
evidence of statements Dotson made to Walker if the jury believed that Walker 
was acting as an agent for the State when talking to Dotson about his case.
        A. Standard of Review and Applicable Law
        In 
reviewing a Sixth Amendment right-to-counsel question, we employ the bifurcated 
standard of review set forth in Guzman v. State. 955 S.W.2d 85, 89 (Tex. 
Crim. App. 1997); see also Manns v. State, 122 S.W.3d 171, 178 (Tex. 
Crim. App. 2003) (applying bifurcated standard to right-to-counsel 
question).  Therefore, we afford almost total deference to a trial 
court’s determination of the historical facts and to its determination of 
mixed questions of law and fact that turn upon an evaluation of credibility and 
demeanor.  Guzman, 955 S.W.2d at 89. We review de novo mixed 
questions of law and fact that do not turn on credibility and demeanor.  Id.  
When the trial court does not make findings of fact, we review the evidence in 
the light most favorable to the trial court’s ruling.  Carmouche v. 
State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).
        It 
is well settled law that, after the initiation of formal criminal proceedings, 
the State cannot deliberately elicit incriminating statements from an accused 
without an express waiver of the right to counsel.  Massiah v. United 
States, 377 U.S. 201, 206, 84 S. Ct. 1199, 1203 (1964).  In order to 
find a Sixth Amendment violation under Massiah and its progeny, the 
challenged statements must have been (1) deliberately elicited (2) by a 
government agent. State v. Hernandez, 842 S.W.2d 306, 312 (Tex. 
App.—San Antonio 1992, pet. ref’d), cert. denied, 509 U.S. 927 
(1993).  The determination of whether a jailhouse informant is acting as a 
state agent depends in large part upon whether the inmate is acting pursuant to 
an agreement with or instructions from government officials.  See Manns, 
122 S.W.3d at 182.  A jailhouse informant who has not entered into any 
agreement with the government and who reports incriminating evidence out of 
conscience or even an “encouraged hope to curry favor” is not acting as a 
government agent. Hernandez, 842 S.W.2d at 314.
B. Walker Was Not Acting as an Agent of the State 
During His Conversations with Dotson
        Outside 
the presence of the jury, Walker testified that he initiated contact with 
Detective Thomas Boetcher of the Fort Worth Police Department by sending him a 
series of letters regarding his jailhouse conversations with Dotson.  In 
the letters, Walker indicated that he wanted a pending burglary charge dismissed 
and that he asked Detective Boetcher to have the White Settlement Police 
Department reinvestigate the case against him.  On December 11, 2001, 
Detective Boetcher met with Walker and obtained a written statement detailing 
information received during Walker’s conversations with Dotson.  During 
the meeting, Detective Boetcher informed Walker that he had no control over the 
White Settlement Police Department and that he could not make any promises 
regarding his pending case.  Walker testified that after the meeting he 
continued to talk to Dotson about the case on his own accord and continued to 
send Detective Boetcher letters describing the encounters.  According to 
Walker, Detective Boetcher never requested that Walker continue discussing 
Dotson’s case with him, nor did he say that it would benefit Walker in anyway 
with regard to his own case.[4]  In addition, 
although Walker admitted that his burglary charge was ultimately reduced to a 
misdemeanor, he maintained that the reduction of the charge was not due to his 
cooperation in the instant case, but rather because he passed a polygraph test.
        Viewing 
the evidence in the light most favorable to the trial court’s ruling, the 
record does not support Dotson’s contention that Walker was acting as an agent 
of the State when he conversed with Dotson.  Although the State accepted 
the information that Walker offered regarding Dotson’s case, it did nothing to 
encourage the elicitation of incriminating statements from Dotson.  The 
State did not bargain for Walker’s assistance, nor did it promise Walker any 
benefit for his cooperation in Dotson’s case.  The evidence demonstrates 
that Walker was a self-initiated informant who hoped that his cooperation in 
Dotson’s case would curry favor with respect to his own case.  See 
Manns, 122 S.W.3d at 189 (holding jailhouse informant not state agent, but 
rather “an entrepreneur who exploited appellant for his own gain”).  
Because Walker was not acting as a state agent when he elicited information from 
Dotson, we hold that the trial court did not abuse its discretion by overruling 
Dotson’s objections to Walker’s testimony.  We overrule Dotson’s 
third point.
V. Motion for 
Continuance
        In 
his fourth point, Dotson contends that the trial court abused its discretion by 
overruling his motion for continuance.  Specifically, Dotson alleges that 
(1) he was not ready for trial because the State failed to give him adequate and 
timely notice and changed the theory of prosecution through reindictments 
shortly before trial and (2) the State failed to give reasonable notice of its 
intent to introduce extraneous offenses and unadjudicated bad acts in advance of 
trial despite his timely requests.  The State maintains that Dotson’s 
complaint is without merit because he cannot demonstrate that the denial of his 
request for a continuance resulted in actual prejudice.
        Under 
the Texas Code of Criminal Procedure, a criminal action may be continued on the 
written motion of a defendant, so long as sufficient cause is fully set forth in 
the motion.  Tex. Code Crim. Proc. 
Ann. art. 29.03 (Vernon 1989).  Granting or denying a motion for 
continuance is within the discretion of the trial court and will not be reversed 
on appeal unless it is shown that the court abused its discretion.  Janecka 
v. State, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), cert. denied, 
522 U.S. 825 (1997).  To establish an abuse of discretion, the defendant 
must show that he was actually prejudiced by counsel’s inadequate preparation 
time.  Id.  Specific prejudice may include unfair surprise, an 
inability to effectively cross-examine the State’s witnesses, or the inability 
to adduce crucial testimony that could have been given by potential 
witnesses.  See id.  However, a mere statement that counsel did 
not have enough time to prepare an adequate defense does not demonstrate 
prejudice.  Id.
        In 
the instant case, although Dotson alleges that the denial of his continuance 
rendered his counsel unable to prepare an adequate defense, he fails to 
establish any specific prejudice arising from the trial court’s failure to 
continue the trial.  Our review of the record reveals that Dotson had ample 
notice of the State’s theory in the case well before trial.  In addition, 
the State provided Dotson with reasonable notice of its intent to introduce 
extraneous offenses and bad acts.  Moreover, Dotson fails to show that the 
denial of his continuance resulted in unfair surprise, his inability to 
effectively cross-examine the State’s witnesses, or his inability to adduce 
crucial testimony that could have been given by potential witnesses.  
Absent a showing of actual prejudice, we cannot hold that the trial court abused 
its discretion by denying Dotson’s motion for continuance.  See 
Heiselbetz v. State, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995).  We 
overrule Dotson’s fourth point.
VI. Jury 
Argument
        In 
his fifth and sixth points, Dotson contends that the trial court erred by 
overruling his motion for mistrial because the State improperly commented on his 
failure to testify and his post-arrest silence during closing argument.  
The State maintains that the complained-of argument did not comment on 
Dotson’s failure to testify or his post-arrest silence.
        During 
closing argument at the guilt-innocence phase of the trial, the State made the 
following argument to the jury:
  
That is not self-defense, and that is consistent with what Mr. Walker 
said.  He said when he discussed it in jail with the Defendant there was 
absolutely no claim of self-defense there.  The Defendant described gunning 
it, stomping on it, and there was no claim of self defense to Mr. Walker.
 
Now, 
if he was going to try and look like the good guy in all this, why wouldn’t he 
have said that?

Dotson 
immediately objected to the argument as improperly commenting on his failure to 
testify and his post-arrest silence.  The trial court sustained Dotson’s 
objection and instructed the jury to disregard the State’s argument.  
Dotson then moved for a mistrial, and the trial court overruled his motion.
        To 
determine if a prosecutor’s comment constituted an impermissible reference to 
an accused’s failure to testify, we must consider whether the language used 
was manifestly intended or was of such a character that the jury would naturally 
and necessarily consider it to be a comment on the defendant’s failure to 
testify. Tex. Code Crim. Proc. Ann. art. 38.08 
(Vernon 1979); see Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. 
App. 2001); Fuentes v. State, 991 S.W.2d 267, 275 (Tex. Crim. App.), cert. 
denied, 528 U.S. 1026 (1999).  The offending language must be viewed 
from the jury’s standpoint, and the implication that the comment referred to 
the accused’s failure to testify must be clear.  Bustamante, 48 
S.W.3d at 765; Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App. 
1992).  A mere indirect or implied allusion to the defendant’s failure to 
testify does not violate the accused’s right to remain silent.  Patrick 
v. State, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), cert. denied, 
517 U.S. 1106 (1996).  The use of a defendant’s post-arrest silence is 
akin to a comment on his failure to testify at trial because it attempts to 
raise an inference of guilt arising from the invocation of a constitutional 
right.  Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App.), cert. 
denied, 516 U.S. 832 (1995).
        When 
the trial court sustains an objection and instructs the jury to disregard but 
denies a defendant’s motion for a mistrial, the issue is whether the trial 
court erred in denying the mistrial.  Faulkner v. State, 940 S.W.2d 
308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  
Its resolution depends on whether the court’s instruction to disregard cured 
the prejudicial effect, if any, of the improper argument.  Id.  Generally, 
an instruction to disregard impermissible argument cures any prejudicial 
effect.  Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 
2000), cert. denied, 532 U.S. 944 (2001); Dinkins, 894 S.W.2d at 
357.  In assessing the curative effect of the court’s instruction to 
disregard, the correct inquiry is whether, in light of the record as a whole, 
the argument was extreme, manifestly improper, injected new and harmful facts 
into the case, or violated a mandatory statutory provision and was thus so 
inflammatory that the instruction to disregard was ineffective. Wesbrook, 
29 S.W.3d at 115-16.  If the instruction cured any prejudicial effect 
caused by the improper argument, a reviewing court should find that the trial 
court did not err.  Dinkins, 894 S.W.2d at 357; Faulkner, 940 
S.W.2d at 312.
        Viewed 
in context, the complained-of argument is ambiguous at best and does not appear 
to improperly comment on either Dotson’s failure to testify at trial or his 
post-arrest right to remain silent.  The State’s argument appears to 
relate solely to Dotson’s jailhouse conversations with Walker, a 
non-government agent, not to times at trial or post-arrest when the invocation 
of a constitutional right was at issue.  During his testimony, Walker 
stated that Dotson never told him that Sitko’s death was an accident or was 
not intentional.  Thus, the State’s argument merely attempted to point 
out Dotson’s failure to justify Sitko’s death during his conversations with 
Walker when he chose not to remain silent.
        However, 
even assuming that the State did indirectly comment on Dotson’s failure to 
testify or his post-arrest right to remain silent, the trial court’s 
instruction to disregard was sufficient to cure any harm resulting from the 
argument.  Therefore, we hold that the trial court did not err by 
overruling Dotson’s motion for mistrial.  We overrule Dotson’s fifth 
and sixth points.
VII. Deadly 
Weapon Finding
        Dotson 
also raises three points challenging the trial court’s affirmative deadly 
weapon finding. Specifically, Dotson alleges that the deadly weapon finding was 
improper because (1) the finding required a higher mental state than that 
determined by the jury for the offense of manslaughter, (2) the State failed to 
give timely notice of its intent to seek the deadly weapon finding on the lesser 
included offense of manslaughter, and (3) the evidence is insufficient to prove 
that he used or exhibited a deadly weapon by the manner of its use or intended 
use.  The State maintains that the affirmative deadly weapon finding is 
appropriate in the instant case and is supported by sufficient evidence.
        Dotson 
argues that because he was found guilty of recklessly committing 
manslaughter by the use of a motor vehicle, he cannot also have been found to 
have intentionally used or exhibited the same motor vehicle as a deadly 
weapon.  Therefore, he complains that the evidence is legally and factually 
insufficient to support the trial court’s affirmative deadly weapon finding 
because the finding required a higher culpable mental state than 
recklessness.  He also complains that the evidence is legally and factually 
insufficient to prove that he used or exhibited a deadly weapon by the manner of 
its use or intended use.
        Under 
Texas law, all felonies are theoretically susceptible to an affirmative deadly 
weapon finding.  Patterson v. State, 769 S.W.2d 938, 940 (Tex. Crim. 
App. 1989).  A deadly weapon is “anything that in the manner of its use 
or intended use is capable of causing death or serious bodily injury.”  Tex. Penal Code Ann. § 1.07(a)(17)(B) 
(Vernon Supp. 2004-05).  The plain language of section 1.07(a)(17)(B) does 
not require that the actor actually intend death or serious bodily injury; 
rather, “[t]he placement of the word ‘capable’ in the provision enables 
the statute to cover conduct that threatens deadly force, even if the actor has 
no intention of actually using deadly force.”  Bailey v. State, 38 
S.W.3d 157, 159 (Tex. Crim. App. 2001). An object qualifies as a deadly weapon 
if the actor intends a use of the object in which it would be capable of causing 
death or serious bodily injury.  Id.  Therefore, the operation 
of a motor vehicle may constitute the “use” of a deadly weapon and no intent 
to use the vehicle as a weapon need be shown to sustain an affirmative 
finding.  Walker v. State, 897 S.W.2d 812, 814 (Tex. Crim. App. 
1995).  Consequently, we reject Dotson’s contention that a deadly weapon 
finding is improper in the instant case merely because the offense of 
manslaughter required less than intentional conduct.  Accord George v. 
State, 117 S.W.3d 285, 290 (Tex. App.—Texarkana 2003, pet. ref’d); Ivie 
v. State, 905 S.W.2d 701, 702 (Tex. App.—Houston [14th Dist.] 1995, no 
pet.).
        In 
addition, our review of the record reveals sufficient evidence to support the 
trial court’s finding that Dotson operated his RV in such a manner as to 
render it capable of causing serious bodily injury or death.  In the 
instant case, the evidence demonstrates that Dotson drove his RV towards Sitko 
and swerved slightly in Sitko’s direction, thereby striking and killing her 
with his RV.  See Tyra v. State, 897 S.W.2d 796, 798 (Tex. Crim. 
App. 1995) (stating that “driving an automobile constitutes the use of it and 
that driving it in a manner capable of causing death or serious bodily injury 
constitutes it a deadly weapon”).  Based on the evidence presented at 
trial, the evidence is both legally and factually sufficient to support the 
trial court’s affirmative deadly weapon finding.
        Dotson 
also alleges that the State failed to provide him with timely notice of its 
intent to seek a deadly weapon finding with respect to the lesser included 
offense of manslaughter.  We disagree.  On January 24, 2002, Dotson 
was charged with Sitko’s murder.  The indictment alleged that Dotson 
intentionally or knowingly caused Sitko’s death by striking her with a motor 
vehicle.  On May 22, 2003, Dotson was reindicted, and the reindictment 
alleged murder and manslaughter, and contained an express allegation that he 
used or exhibited a deadly weapon during the commission of the offense.  It 
is well settled law that an allegation of serious bodily injury or death caused 
by some act or instrument is sufficient notice for a deadly weapon 
finding.  Ex parte Beck, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989); 
see also Ex parte McKithan, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) 
(recognizing that motor vehicle can be deadly weapon in manslaughter case for 
purposes of providing notice in indictment).  Contrary to Dotson’s 
allegations, he was given more than sufficient notice of the State’s intent to 
seek a deadly weapon finding on the lesser included offense of 
manslaughter.  The January 24 indictment was sufficient to put Dotson on 
notice that the State intended to seek a deadly weapon finding, and the January 
24 indictment necessarily included the lesser offense of manslaughter.  See 
Allison v. State, 618 S.W.2d 763, 764 (Tex. Crim. App. [Panel Op.] 
1981).  Therefore, we overrule Dotson’s seventh, eighth, and ninth 
points.
VIII. Motion 
for New Trial
        In 
his tenth point, Dotson contends that the trial court abused its discretion by 
failing to conduct a hearing on his motion for new trial.  The State 
maintains that the trial court did not abuse its discretion by failing to hold a 
hearing on Dotson’s motion for new trial because the allegations in Dotson’s 
motion were either determinable by the record or unsupported by factual 
allegations in his motion and supporting affidavit.
        The 
right to a hearing on a motion for new trial is not absolute.  Reyes v. 
State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993).  However, a 
defendant is entitled to a hearing on his motion for new trial if the motion and 
the supporting affidavits raise matters not determinable from the record that 
could entitle him to relief.  Wallace v. State, 106 S.W.3d 103, 108 
(Tex. Crim. App. 2003).  To be sufficient to entitle the defendant to a 
hearing, the motion for new trial and accompanying affidavits need not establish 
a prima facie case for a new trial.  Jordan v. State, 883 S.W.2d 
664, 665 (Tex. Crim. App. 1994).  These documents need merely reflect that 
reasonable grounds exist for holding that a new trial could be granted.  Martinez 
v. State, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002).  As a prerequisite 
to obtaining a hearing, the motion must be supported by an affidavit that 
specifically demonstrates the truth of the grounds for attack.  Id. at 
21.  Affidavits that are conclusory in nature and unsupported by facts are 
not sufficient to put the trial court on notice that reasonable grounds for 
relief exist. Jordan, 883 S.W.2d at 665.  We review the trial 
court’s decision not to hold a hearing on a motion for new trial under an 
abuse of discretion standard.  Wallace, 106 S.W.3d at 106.
        On 
June 20, 2003, Dotson filed and presented an amended motion for new trial to the 
trial court. The trial court never signed a written order denying Dotson’s 
motion for new trial, and it was overruled by operation of law.  Dotson’s 
amended motion set forth several grounds alleged as a basis for new trial.  
In Dotson’s brief, however, the only grounds mentioned concern the denial of 
his motion for continuance and alleged jury misconduct; thus, we will only 
address these two grounds on appeal.
        In 
his amended motion for new trial, Dotson claimed that the trial court abused its 
discretion by denying his motion for continuance because (1) the State failed to 
give him adequate and timely notice and changed the theory of prosecution 
through reindictments shortly before trial and (2) the State failed to give 
reasonable notice of its intent to introduce extraneous offenses and 
unadjudicated bad acts in advance of trial despite his timely requests.  He 
concluded that “[b]y denying the continuance[,] the Court denied [him] a fair 
trial.”  He also claimed “that the jury committed jury misconduct in 
that it failed to follow the jury instructions submitted upon the law of 
self-defense and necessity as well as that of manslaughter.”  The motion 
contained sworn verifications by Dotson and his counsel that the contents of the 
motion were based on personal knowledge and were true and correct.  Dotson, 
however, failed to attach an affidavit to his motion in support of his 
contentions.
        Our 
review of the record reveals that Dotson’s allegations in his amended motion 
for new trial were conclusory in nature, and therefore, insufficient to put the 
trial court on notice that reasonable grounds for relief existed.  See 
King v. State, 29 S.W.3d 556, 568-69 (Tex. Crim. App. 2000) (holding that 
trial court did not err in refusing to hold a hearing because bare assertions in 
verified motion failed to establish facts entitling defendant to a new trial); Buerger 
v. State, 60 S.W.3d 358, 362-63 (Tex. App.—Houston [14th Dist.] 2001, pet. 
ref’d) (holding affidavit was too conclusory, in part, because despite 
appellant's incompetence claim, he “did not allege what medication he needed; 
why it was needed or how its absence affected his competency during the hearing; 
what aspect of the hearing he failed to appreciate . . . ; or what he would have 
changed if he had been alert and oriented . . . ”); Watson v. State, 37 
S.W.3d 559, 561 (Tex. App.—Beaumont 2001, no pet.) (holding defendant's 
affidavit stating, “I wish to state that I did not intelligently, knowingly[,] 
or voluntarily enter my plea.  I did not understand the plea agreement 
fully, and I did not understand the consequences of my plea,” was too 
conclusory); see also Reed v. State, 841 S.W.2d 55, 57 (Tex. App.—El 
Paso 1992, pet. ref’d) (stating that a motion for new trial alleging jury 
misconduct must be supported by the affidavit of a juror or another person in 
the position to know the facts or must state some reason or excuse for the 
failure to produce such an affidavit).  Because Dotson failed to establish 
facts demonstrating the truth of his grounds for attack and entitling him to a 
new trial, the trial court did not abuse its discretion by failing to conduct a 
hearing on his motion.  Accordingly, we overrule Dotson’s tenth point.
IX. Conclusion
        Having 
overruled all of Dotson’s points on appeal, we affirm the trial court’s 
judgment.
 
   
                                                                  SUE 
WALKER
                                                                  JUSTICE
 
   
PANEL 
A:   WALKER, J.; SAM J. DAY, J. (Retired, Sitting by 
Assignment); and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by 
Assignment).
 
PUBLISH
DELIVERED: 
September 2, 2004

 
NOTES
1.  
Dotson also challenges the sufficiency of the evidence to support the trial 
court’s affirmative deadly weapon finding, complaining that “because he was 
found guilty of recklessly committing manslaughter[,] he cannot be found to have 
intentionally used or exhibited a deadly weapon.”  Because he also raises 
this complaint as his seventh point, we will address it later in this opinion.
2.  
On June 11, 2003, Dotson stipulated to the sixty-foot distance provided by 
Detective Wangler.
3.  
The trial court granted Dotson a running objection to Walker’s testimony.  
The substance of Walker’s testimony is detailed in the legal and factual 
sufficiency portion of this opinion.
4.  
While testifying in front of the jury, Walker once again proclaimed that he was 
not acting on behalf of the State during his conversations with Dotson and that 
Detective Boetcher did not offer him any sort of deal in exchange for 
information about Dotson’s case.