Opinion issued June 23, 2005






















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00271-CR




JUAN DAVID GUTIERREZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 942211




MEMORANDUM OPINION

          A jury convicted appellant, Juan David Gutierrez, of murder. See Tex. Pen.
Code Ann. § 19.02 (Vernon 2003). The jury assessed punishment at confinement for
18 years.
          Appellant was charged by indictment with (1) intentionally and knowingly
causing the death of complainant by stabbing him with a deadly weapon, namely a
knife, and (2) intending to cause serious bodily injury to the complainant and causing
the death of the complainant by intentionally and knowingly committing an act
clearly dangerous to human life, namely by stabbing him with a deadly weapon, a
knife. See id. § 19.02(b)(1)–(2). The jury charge included both methods of
committing murder as well as a charge on self-defense.
          On appeal, appellant raises seven issues. In issues (1) and (2), appellant
challenges the legal and factual sufficiency of the evidence supporting his conviction
as alleged in the first paragraph of the indictment. In issues (3) and (4), appellant
challenges the legal and factual sufficiency of the evidence supporting his conviction
as alleged in the second paragraph of the indictment. In issues (5) and (6), appellant
challenges the jury’s rejection of his self-defense claim. Finally, in issue (7),
appellant contends that the trial court erred in refusing to grant his requested charge
on unlawful entry into a habitation. 
          We affirm.
 
BACKGROUND
          In 1999, appellant, Juan David Gutierrez, began dating Luisa Gonzalez. 
Shortly thereafter, Luisa learned she was pregnant and moved in with appellant. In
October 2000, they had a baby boy, Michael Gutierrez (“Mikey”). Over time, their
relationship became tumultuous, with several separations and attempts at
reconciliation. Ultimately, the couple decided to live separately but continued to
date.
          In February 2003, Luisa met the complainant, John Barron. On March 7, 2003,
they moved in together. Two days later, on Sunday, March 9, appellant discovered
that Luisa and John were together. Appellant called Luisa that night, questioned her
about her feelings for John, and expressed concern over losing Mikey. Appellant
asked Luisa to bring Mikey over to see him the next morning.
          Monday morning, Luisa dropped Mikey off to see appellant. Appellant lived
with his sister, Sarah Casas, and her husband, Jose Casas. Luisa picked Mikey up
that evening without incident. However, later that night, appellant called Luisa and
angrily expressed that Mikey no longer seemed to consider appellant his dad; rather,
when asked, Mikey referred to John as his dad. Appellant threatened to take Mikey
from Luisa. Later, appellant called back, apologized, and asked to see Mikey the
next day. Luisa agreed.
          Tuesday morning, when Luisa arrived at appellant’s house, appellant began
removing Mikey’s car seat from Luisa’s car. Luisa asked for an explanation and
appellant responded that he had decided to keep Mikey for the week. Luisa agreed
but said that she would stop by each day to check on Mikey.
          The day of the incident, Wednesday, March 12, 2003, appellant called Luisa
and asked if she was coming over. Luisa said that she and John would be coming
over when John got home from work. Appellant said that he did not want to see John
at his house and instructed Luisa to come alone to retrieve Mikey or she would not
see Mikey again.
          When John arrived home from work, he and Luisa drove to appellant’s house. 
Luisa’s sister, Leonela Gonzalez, rode along. When they arrived at appellant’s house,
Luisa got out, walked up the steps of the front porch, and knocked on the door. John
and Leonela waited in the car. Appellant’s brother-in-law, Jose Casas, answered the
door. Luisa told him she was there to pick up Mikey. Jose responded that he could
not let her have him. Moments later, appellant came through the doorway, pushing
Jose aside and striking Luisa in the shoulder as he passed. Appellant went down the
steps of the porch shouting, “Where is he? Where is he?” Appellant pulled a knife
from his back pocket. Luisa went after appellant, screaming, and hitting him in the
back. Sarah came out of the house and began swinging at Luisa. Mikey toddled out
of the house close behind.
          Leonela had remained in the car during the confrontation. When she saw
Mikey coming out of the house, she got out and went to him. She put him in the car,
then went over to intervene between Luisa and Sarah.
          John had stepped out of the car when Luisa initially started screaming, but had
remained beside it. Appellant approached him shouting, “Do you want some shit?” 
John moved away from appellant, around the back of the car. Appellant struck John
with his hand. John turned and ran. Appellant chased him briefly. Upon returning
and seeing Luisa, appellant said, “Look at him run. I stabbed his stupid ass.” Luisa
screamed, “No, no, no, you couldn’t.” Appellant put his knife on Luisa and said,
“You want a piece of this?” Luisa could see John some distance away, clutching his
chest. Luisa screamed for him to come back to the car. John came back and Luisa
helped him into the car. Leonela got in and Luisa drove toward the hospital, but John
died on the way.
          After the incident, appellant hid the knife under the house. Initially, appellant
reported to police that the knife was John’s and that John had stabbed himself. Later,
appellant admitted that the knife was his own and that he had struck John.
          The medical examiner determined that John died from a stab wound to the
chest that punctured his heart. A second shallow knife wound was also found in
John’s chest.
 
 
Sufficiency of the Evidence
          In his first four issues, appellant challenges the sufficiency of the evidence
supporting his conviction. As laid out above, the indictment contained two
paragraphs essentially alleging that appellant either (1) intentionally or knowingly
caused the death of John, by stabbing him with a knife, or (2) intended to cause
serious bodily injury to John and did cause John’s death by intentionally or
knowingly committing an act clearly dangerous to human life, namely stabbing John
with a knife. The jury was charged accordingly and returned a general verdict. On
appeal, appellant contends that the evidence is insufficient to establish either theory
of murder because the State failed to prove the requisite intent. 
A.      Standard of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000). 
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what
weight to place on contradictory testimonial evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. Id. at 408. In conducting a factual-sufficiency review, we must discuss the evidence that, according to appellant, most
undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003). 
B.      Murder
          The Penal Code provides, in pertinent part, that a person commits murder if he
(1) intentionally or knowingly causes the death of an individual or (2) intends to
cause serious bodily injury and commits an act clearly dangerous to human life that
causes the death of an individual. Tex. Pen. Code Ann. § 19.02 (Vernon 2003). 
          A person acts intentionally, with respect to the nature or result of his conduct,
when it is his conscious objective or desire to engage in the conduct or cause the
result. Id. § 6.03(a). A person acts knowingly with respect to the result of his
conduct when he is aware that his conduct is reasonably certain to cause the result. 
Id. § 6.03(b). Intent can be inferred from the acts, words, and conduct of the accused. 
Patrick v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Similarly, knowledge
can be inferred from the conduct of and remarks by the accused and from
circumstances surrounding the acts engaged in by the accused. See Dillon v. State,
574 S.W.2d 92, 94–95 (Tex. Crim. App. 1978).
          Specific intent to kill may be inferred from the use of a deadly weapon, unless
it is reasonably apparent that serious bodily injury or death could not result from the
particular manner of use. Godsey v. State, 719 S.W.2d 578, 580–81 (Tex. Crim. App.
1986). A deadly weapon includes “anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.” Tex. Pen. Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2004–2005). A knife is not a deadly weapon per se. 
Thomas v. State, 821 S.W.2d 616, 619–20 (Tex. Crim. App. 1991); Garcia v. State,
17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). However, a knife
is considered a deadly weapon if it is used in a way that is capable of causing death
or serious bodily injury. McCain v. State, 22 S.W.3d 497, 502–03 (Tex. Crim. App. 
2000). Indeed, when a deadly weapon is used and death results, the inference of an
intent to kill is almost conclusive. Flanagan v. State, 675 S.W.2d 734, 745 n.9 (Tex.
Crim. App. 1984).
C.      Analysis
          1.       Legal Sufficiency
          In his first and third issues, appellant contends that the evidence is legally
insufficient to support his conviction under either theory of murder because the State
failed to show that appellant intentionally or knowingly caused John’s death or
intentionally or knowingly committed an act dangerous to human life. The State
provided ample evidence of appellant’s intent under either theory. 
          The evidence shows that appellant told Luisa he did not want John at his house. 
The evidence shows that, when Luisa and John arrived at appellant’s house, appellant
came out of the house violently, pushing Jose aside and striking Luisa. Appellant
admitted at trial that he started toward John the moment he saw John getting out of
the car. Appellant admitted that he pulled his knife from his back pocket and that he
planned to hit John with his knife hand. The evidence shows that appellant descended
the porch steps saying, “Where is he? Where is he?” When appellant saw John at the
car, appellant ran toward him screaming, “Do you want some shit?” Appellant stated
that he went down the steps of the porch toward John and that John only traveled five
to six steps before appellant reached him. Appellant admitted that he swung his knife
hand at appellant and it “just went in.” Further, appellant admitted that John did not
have a weapon and never said anything to appellant. From appellant’s admissions
and the surrounding evidence, the jury could have reasonably concluded that
appellant intended to cause John serious bodily injury or death. See Patrick, 906
S.W.2d at 487; Dillon, 574 S.W.2d at 94–95. 
          In addition, the jury could have reasonably concluded that appellant intended
the injuries he inflicted on John due to the nature of wounds. The evidence shows
that John was stabbed twice with the knife—one wound entered John’s chest and
penetrated his heart and the second entered his chest one-half inch. The jury could
have reasonably concluded that appellant did not accidentally stab John because
appellant stabbed him more than once, and, in one instance, with fatal depth and
precision. See Felder v. State, 848 S.W.2d 85, 90 (Tex. Crim. App. 1992) (finding
intent from number and location of stab wounds).
          Further, the jury could have reasonably concluded that appellant behaved
intentionally due to appellant’s conduct after the attack. After stabbing John,
appellant approached Luisa and said, “Look at him run. I stabbed his stupid ass.” 
Appellant put the knife to Luisa’s throat and asked, “You want a piece of this?” 
These remarks suggest that appellant did not accidentally stab John; rather,
appellant’s use of the knife was intentional. See Flanagan, 675 S.W.2d at 745 n.9.
          Moreover, appellant demonstrated consciousness of guilt after the incident by
lying to the police and hiding the knife. Appellant testified that, when he was first
asked about the incident by police, he said that the knife belonged to John and that
John stabbed himself. Appellant admitted at trial that this statement was false. 
Further, appellant admitted that he hid the knife under the house. See Guevara v.
State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (concluding that “[a]ttempts to
conceal incriminating evidence, inconsistent statements, and implausible explanations
to police are probative of wrongful conduct and are also circumstances of guilt”);
Tezino v. State, 765 S.W.2d 482, 485 (Tex. App.—Houston [1st Dist.] 1988, pet.
ref’d) (stating that concealment of pertinent evidence supports inference of guilt).         Viewing the evidence in the light most favorable to the verdict, we hold that a
rational trier of fact could have found beyond a reasonable doubt the requisite intent
to support either theory or murder. See Johnson, 23 S.W.3d at 7.
          We overrule appellant’s first and third issues.
          2.       Factual Sufficiency 
          In his second and fourth issues, appellant contends that the evidence is
factually insufficient to support his conviction because the State failed to show that
appellant intended to cause John’s death or intended to cause John serious bodily
injury. As discussed above, the State provided evidence of appellant’s intent under
either theory.
          To controvert this evidence, the defense put on the testimony of appellant,
Sarah, and Jose. All three testified that appellant went down the steps and out to John
in the driveway, but that John ran at appellant. Sarah and Jose did not see the
stabbing from where they stood. Sarah testified that appellant never shouted after the
stabbing or put the knife on Luisa. 
          Appellant testified that he was standing on the porch being hit by Luisa when
he saw John’s head pop up over the top of the car, indicating that John was getting
out of the car. Appellant testified that John was staring at him and he felt that John
was going to come into the house and harm his family. Appellant maintains that he
went out to meet John with his knife in his hand in an attempt to scare John and get
him to leave. Appellant testified that he just swung his knife hand at John intending
to punch him with his hand.
          As the determiner of the credibility of the witnesses, the fact-finder may choose
to believe all, some, or none of the testimony presented. See Cain, 958 S.W.2d at
407; McKinny v. State, 76 S.W.3d 463, 468–69 (Tex. App.—Houston [1st Dist.]
2002, no pet.). We hold that the jury’s verdict that appellant possessed the requisite
intent under either theory of murder is not irrational, or clearly wrong and manifestly
unjust, or that the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. See Escamilla, 143 S.W.3d at 817.
          We overrule appellant’s second and fourth issues.
 
 
Self-defense
          In his fifth and sixth issues, appellant contends that the evidence was legally
and factually insufficient to support his conviction because he acted in self-defense.
          A defendant bears the burden to show evidence in support of his self-defense
claim. See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the
defendant meets his burden, the State bears the burden to disprove the defense beyond
a reasonable doubt. Id. When the fact-finder finds the defendant guilty, there is an
implicit finding against the self-defense theory. Id.
          When, as here, appellant contends that the evidence is legally insufficient to
support the fact-finder’s rejection of his self-defense claim, we do not consider
whether the State presented evidence that refuted the self-defense evidence; rather,
we determine whether, after viewing all the evidence in the light most favorable to
the prosecution, any rational trier of fact would have found the essential elements of
the offense beyond a reasonable doubt and would have found against the defendant
on the self-defense issue beyond a reasonable doubt. See Saxton v. State, 804 S.W.2d
910, 914 (Tex. Crim. App. 1991).
          In addition, when, as here, appellant contends that the evidence is factually
insufficient to support the factual sufficiency of the evidence supporting the
factfinder’s rejection of a self-defense claim, we review all the evidence in a neutral
light and ask whether the State’s evidence, taken alone, is too weak to support the
verdict and whether proof of guilt, although adequate if taken alone, is against the
great weight and preponderance of the evidence. Zuliani, 97 S.W.3d at 595.
          A person may use deadly force against another to protect himself from the
other’s use or attempted use of deadly force. Tex. Pen. Code Ann. § 9.32(a)(3)(A)
(Vernon 2003). “Deadly force” is force that is intended or known by the actor to
cause, or in the manner of its use or intended use is capable of causing serious bodily
injury or death. Id. § 9.01(3). The Penal Code provides that “a person is justified in
using force against another when and to the degree he reasonably believes . . . is
immediately necessary to protect himself against the other’s use or attempted use of
unlawful force,” with some exceptions. Id. § 9.31(a). For example, such use of force
is not justified if the actor provoked the other’s use or attempted use of unlawful
force. Id. § 9.31(b). 
          Here, it is undisputed that appellant was inside his home when Luisa and John
arrived and that appellant came outside to confront John. It is undisputed that
appellant had to descend the porch steps and move past the vehicle parked in front of
Luisa’s car to get to John, and that John took no more than five or six steps once he
got out of the car. Further, while appellant initially stated to police that John had the
knife, appellant later changed his statement and admitted that the knife was his own.
          Appellant stated that he thought he was under deadly attack by John because
appellant did not know “what he was intending” or “what he could have had.” 
Appellant maintained that he stabbed John in reaction to John’s threatening conduct. 
However, the only actions appellant offered were that John got out of the car and
stared at him. Appellant stated that, when appellant got nearer to John, John put his
fists up. Considering that appellant was coming at John with a knife, the jury could
have reasonably concluded that John’s fists were up in preparation to defend himself.
Indeed, the jury could have reasonably concluded that there is no evidence of
anything in John’s conduct that could have amounted to use or attempted use of
deadly force. See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992)
(concluding that jury is entitled to accept or reject any portion of witness’s testimony
and determines whether to accept defendant’s self-defense theory). 
           After viewing all the evidence in the light most favorable to the verdict, we
conclude that the jury would have found against the defendant on the self-defense
issue beyond a reasonable doubt. See Saxton, 804 S.W.2d at 914. In addition,
considering all of the evidence in a neutral light, we conclude that the State’s
evidence, taken alone, is not too weak to support the verdict or that proof of guilt is
against the great weight and preponderance of the evidence. Zuliani, 97 S.W.3d at
595.
           Appellant’s fifth and sixth issues are overruled.
 
 
Jury Charge
          In his seventh issue, appellant contends that the trial court erred in refusing to
charge the jury as requested. Specifically, appellant argues that, during the incident,
he believed that John would have tried to enter appellant’s home if appellant had not
stopped him in the driveway. Hence, asserts appellant, he was entitled to an
instruction on Penal Code section 9.32(b). The State contends that there is no
evidence to raise such an issue. We agree.
          A defendant is entitled to an instruction on any properly requested defensive
issue that is raised by the evidence. Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim
App. 2001). However, if the evidence does not establish the defensive issue, the
defendant is not entitled to an instruction on the issue. See Granger v. State, 3
S.W.3d 36, 38 (Tex. Crim. App. 1999).
          Penal Code 9.32 states, in pertinent part, that 
          (a)     A person is justified in using deadly force against another
(1) if he would be justified in using force in self-defense under § 9.31; 
(2) if a reasonable person in the actor’s situation would not have
retreated, and 
(3) when and to the degree he reasonably believes the deadly force is
immediately necessary;
                    (A)    to protect himself against the other’s use or attempted use of
unlawful deadly force; . . . .
          (b)     The requirement imposed by (a)(2) does not apply to an actor who uses
force against a person who is at the time of the use of force committing
an offense of unlawful entry in the habitation of the actor.

Tex. Pen. Code Ann. § 9.32 (Vernon 2003) (emphasis added). A “habitation” is a
“structure or vehicle adapted for overnight accommodations” and includes the
“separately secured or occupied portions of the structure . . . and each structure
appurtenant to or connected with the structure.” Tex. Pen. Code Ann. § 28.01(1)
(Vernon 2003).
          The statutory language clearly requires an entry into a habitation. Here, the
evidence shows that the incident between appellant and John took place in the
driveway, beside and behind a vehicle. There is no evidence that John physically
entered, or attempted to enter, appellant’s habitation or any of the structures
appurtenant, such as the front porch. 
          Appellant’s subjective beliefs about John’s intentions are not evidence to raise
such an issue, no such instruction was required. See Granger, 3 S.W.3d at 38; Dyson
v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).
          Appellant’s seventh issue is overruled.
Conclusion
We affirm the judgment of the trial court. 
 


                                                   Laura Carter Higley
                                                   Justice
Panel consists of Justices Taft, Alcala, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).