TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00175-CR







Kenneth Darroll Oldham, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 45,541, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







PER CURIAM


 Appellant was tried on a two-count indictment accusing him of intoxication assault (count
one) and aggravated assault (count two). Tex. Penal Code Ann. §§ 22.02(a)(1), 49.07(a) (West 1994). 
A jury found him guilty of aggravated assault and assessed punishment at imprisonment for five years. On
the jury's recommendation, the district court suspended imposition of sentence and placed appellant on
community supervision. Appellant challenges the sufficiency of the evidence and complains of charge error. 
We will affirm.

 Appellant, a quality control manager for a construction company, was returning to his
apartment in Temple from a job site on the night of June 23, 1995. In the bed of his pickup truck, appellant
was carrying a 1500-pound welding machine he had borrowed that night for personal use. Appellant
testified that due to the large weight of the welding machine, the truck was not handling normally and "would
want to walk with you if you tried to go too fast with it. So long as you drove it at a slow speed it was
relatively stable. But if you increased your speed . . . the back of it would try to what I call fish tail." 
Appellant was driving "about 50" when he entered an "S" curve on West Adams near its intersection with
Pea Ridge. Appellant testified that he was very familiar with this stretch of road, having driven it "hundreds
of times." According to appellant, "halfway into the first S curve" the welding machine, which was not tied
down or otherwise secured, shifted, causing the back of the truck to leave the road. In an effort to regain
control of the truck, appellant drove onto the shoulder of the road and then attempted to steer the truck
back onto the highway. Appellant testified, "I could tell that I had overcorrected and countered again
which would be back to my left which would also bring the truck back toward the highway, but at this time
the violent nature of what was going on . . . the truck was totally out of control at that point." Appellant's
truck swerved into the oncoming lane of traffic and collided with an automobile driven by Mary Anderson. 
James Anderson, Mary's husband who was riding with her, was severely injured.

 Two drivers who witnessed the accident and stopped to help testified that appellant smelled
of alcoholic beverage. A Department of Public Safety trooper and two Temple police officers who
interviewed appellant at the scene and observed his demeanor testified that, in their opinion, he was
intoxicated. Appellant declined to perform field sobriety tests. Appellant also declined to take a breath
alcohol test following his arrest. A partially consumed can of beer was in appellant's truck, together with
a cooler containing five more cans of beer. Appellant testified that he purchased this beer several hours
before the collision and drank the one-half can of beer soon after, had subsequently eaten dinner, and was
not intoxicated. Appellant said his unsteadiness and glassy eyes following the collision were the result of
hitting his head on the truck's windshield. Appellant explained that the aftereffects of the collision left him
physically unable to perform the field sobriety tests, and that he declined to take the breath test because
he did not trust the test machine.

 One of the investigating officers testified that appellant told him at the scene that he fell
asleep behind the wheel. Appellant testified that he did not fall asleep and did not remember making such
a statement. Appellant's daughter testified that she saw and spoke with appellant at dinner on the night of
the collision, and that appellant was not intoxicated when he left home at 7:00 to get the welder. Other
witnesses testified that appellant had a knot on his head, a swollen eye, and blood on his ear on the morning
after the collision. Appellant went to a hospital emergency room and was referred to a neurologist, but he
did not keep the appointment.

 Michael Ingraham, a private investigator and former police officer with expertise in accident
reconstruction, testified for the defense. Based on his examination of the truck and interview with appellant,
Ingraham was of the opinion that the weight of the welder made the pickup unstable, and that as the truck
entered the "S" curve the welder shifted and caused the truck to leave the road. When appellant attempted
to return to the highway, the welder shifted again. According to Ingraham,



[O]nce that he had left the roadway with that high load in there and pulled it back trying
to correct, I think it was pretty well out of his hands from that point. I don't think there
was anything he could have done because at best he's going to get that welder rocking
from side to side and the high center of gravity is going to cause a lot of control problems
with the vehicle.



On cross-examination, Ingraham acknowledged that "carrying that kind of load into an S curve he's going
to have a problem" and that "it would be better if you secured the load."

 The district court instructed the jury to convict appellant of aggravated assault if it found
that he intentionally, knowingly, or recklessly caused serious bodily injury to James Anderson by



(1) failing to keep a proper lookout for other vehicles in front of his vehicle; or, (2) failing
to timely apply the brakes to his vehicle in order to avoid the possibility of a collision with
the vehicle in which James Anderson was riding; or (3) driving his vehicle at too great a
rate of speed while approaching an intersection or curves in the road; or, (4) failing to turn
his vehicle to avoid the collision with the vehicle in which James Anderson was riding; or
(5) failing to drive his motor vehicle in one lane; or (6) driving a motor vehicle while
drinking an intoxicating beverage or, (7) driving a motor vehicle while under the influence
of an intoxicating beverage; or (8) sleeping while the motor vehicle which defendant was
driving or operating was still in motion; or (9) failing to give the vehicle in which James
Anderson was riding at least one-half of the main traveled portion of the roadway; or, (10)
driving his vehicle to the left side of the center of the roadway when the left side was not
free of oncoming traffic; or (11) failing to keep his vehicle out of the lane of traffic occupied
by a motor vehicle traveling in the opposite direction of the road on which [he] was
traveling; or (12) failing to signal his intention to enter the lane occupied by the vehicle in
which James Anderson was riding, which acts or omissions, singularly or in combination
with the others named above, resulted in the motor vehicle driven or operated by
Defendant colliding with the motor vehicle in which James Anderson was riding.



Appellant contends the evidence is legally and factually insufficient to support the conclusion that the
collision was the result of reckless conduct on his part. He asserts that the evidence shows him guilty, at
most, of criminal negligence.

 The distinction between recklessness and criminal negligence lies in the actor's awareness
of the risk. A person is reckless with respect to the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Penal Code Ann.
§ 6.03(c) (West 1994). A person is criminally negligent with respect to the result of his conduct when he
ought to be aware of a substantial and unjustifiable risk that the result will occur. Id. § 6.03(d). Proof of
a culpable mental state generally relies on circumstantial evidence. Whether the actor was or should have
been aware of the risk is a conclusion to be drawn through inference from all the circumstances by the trier
of fact. Lopez v. State, 630 S.W.2d 936, 942 (Tex. Crim. App. 1982) (quoting Dillon v. State, 574
S.W.2d 92, 94 (Tex. Crim. App. 1978)).

 In determining the legal sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v.
State, 614 S.W.2d 155 (Tex. Crim. App. 1981). In effect, appellant asks this Court to hold, as a matter
of law, that no rational trier of fact could infer from the evidence in this cause that appellant consciously
disregarded a substantial and unjustifiable risk that his actions would result in serious bodily injury to
another. We decline to so hold. Appellant was admittedly aware that the large, unsecured weight in the
back of his pickup left the vehicle seriously unstable. By his own testimony, appellant was also familiar with
the "S" curve. A rational trier of fact could infer that when appellant drove his overloaded and unstable
truck into the curve at fifty miles per hour, he consciously disregarded a substantial and unjustifiable risk
that he would lose control and collide with another vehicle. A rational trier of fact could further find that
the disregard of this risk constituted a gross deviation from the standard of care that an ordinary person
would exercise under the circumstances as viewed from appellant's standpoint. Penal Code § 6.03(c). 
Point of error one is overruled.

 When conducting a factual sufficiency review, we do not view the evidence in the light most
favorable to the verdict. Instead, we consider all the evidence equally, including the testimony of defense
witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319 (Tex.
App.--Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd as untimely filed).

 Appellant argues that the testimony as a whole shows that the collision was not caused by
his actions, but by the weight of the welding machine shifting in the bed of his pickup. Appellant asserts
that once this happened, he was powerless to avoid the collision. This argument ignores the fact that it was
appellant who put the welder in the truck and failed to secure it. It also overlooks appellant's admission
that he knew the weight of the welder made the truck unstable and the truck would "fish tail" if driven too
fast. Considering all the evidence adduced at trial, the jury's conclusion that appellant acted recklessly is
not clearly wrong or unjust. Point of error two is overruled.

 Finally, appellant contends the district court erred by refusing a specially requested
instruction on the meaning of recklessness. The court's charge tracked Penal Code section 6.03(c) as
applied to the results of conduct. Appellant requested an additional sentence reading, "For a person to be
deemed `reckless,' there must actually be both a substantial and an unjustifiable risk that the result
complained of will occur, and that the person acting was actually aware of such risk and consciously
disregarded it."

 When a refused instruction is substantially the same as the charge given, there is no error
in refusing it. Moody v. State, 827 S.W.2d 875, 893 (Tex. Crim. App. 1992). Appellant's requested
instruction merely paraphrased the Penal Code definition of recklessness included in the court's charge. 
There is no meaningful difference between a risk and an "actual risk," or between an awareness of risk and
an "actual awareness." Because the court's charge correctly defined recklessness as that term related to
this cause, the court did not err by refusing the requested additional instruction. Point of error three is
overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: October 2, 1996

Do Not Publish




of fact. Lopez v. State, 630 S.W.2d 936, 942 (Tex. Crim. App. 1982) (quoting Dillon v. State, 574
S.W.2d 92, 94 (Tex. Crim. App. 1978)).

 In determining the legal sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v.
State, 614 S.W.2d 155 (Tex. Crim. App. 1981). In effect, appellant asks this Court to hold, as a matter
of law, that no rational trier of fact could infer from the evidence in this cause that appellant consciously
disregarded a substantial and unjustifiable risk that his actions would result in serious bodily injury to
another. We decline to so hold. Appellant was admittedly aware that the large, unsecured weight in the
back of his pickup left the vehicle seriously unstable. By his own testimony, appellant was also familiar with
the "S" curve. A rational trier of fact could infer that when appellant drove his overloaded and unstable
truck into the curve at fifty miles per hour, he consciously disregarded a substantial and unjustifiable risk
that he would lose control and collide with another vehicle. A rational trier of fact could further find that
the disregard of this risk constituted a gross deviation from the standard of care that an ordinary person
would exercise under the circumstances as viewed from appellant's standpoint. Penal Code § 6.03(c). 
Point of error one is overruled.

 When conducting a factual sufficiency review, we do not view the evidence in the light most
favorable to the verdict. Instead, we consider all the evidence equally, including the testimony of defense
witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319 (Tex.
App.--Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd as untimely filed).

 Appellant argues that the testimony as a whole shows that the collision was not caused by
his actions, but by the weight of the welding machine shifting in the bed of his pickup. Appellant asserts
that once this happened, he was powerless to avoid the collision. This argument ignores the fact that it was
appellant who put the welder in the truck and failed to secure it. It also overlooks appellant's admission
that he knew the weight of the welder made the truck unstable and the truck would "fish tail" if driven too
fast. Considering all the evidence adduced at trial, the jury's conclusion that appellant acted recklessly is
not clearly wrong or unjust. Point of error two is overruled.

 Finally, appellant contends the district court erred by refusing a specially requested
instruction on the meaning of recklessness. The court's charge tracked Penal Code section 6.03(c) as
applied to the results of conduct. Appellant requested an additional sentence reading, "For a person to be
deemed `reckless,' there must actually be both a substantial and an unjustifiable risk that the result
complained of will occur, and that the person acting was actually aware of such risk and consciously
disregarded it."

 When a refused instruction is substantially the same as the charge given, there is no error
in refusing it. Moody v. State, 827 S.W.2d 875, 893 (Tex. Crim. App. 1992). Appellant's requested
instruction merely paraphrased the Penal Code definition of recklessness included in the court's charge. 
There is no meaningful difference between a risk and an "actual risk," or between an awareness of risk and
an "actual awareness." Because the court's charge correctly defined recklessness as that term related to
this cause, the court did not err by refusing the requested additional instruction. Point of error three is
overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith