Opinion issued December 8, 2005

 












In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00101-CR
____________
 
MARK DOUGLAS MONTANA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 23rd Judicial District Court
Brazoria County, Texas
Trial Court Cause No. 45,278
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Mark Douglas Montana, guilty of the offense of
criminally negligent homicide,


 and assessed his punishment at confinement for six
years. In three points of error, appellant contends that the evidence was legally and
factually insufficient to support his conviction and that the trial court erred in
admitting, during the punishment phase of the trial, hearsay testimony over his
objection. We affirm.
Factual and Procedural Background
          Kevin Knapp, a truck driver, testified that, on April 9, 2005 at approximately
10:45 a.m., while driving his truck, he approached the intersection of FM 2004 and
Highway 288. As he traveled north on Highway 288 toward the intersection, a gray
Durango, driven by appellant, passed him traveling between 60 and 65 miles per
hour. The traffic signal light for northbound traffic on Highway 288 was red. The
Durango proceeded through the intersection and, without its brake lights ever coming
on, collided with a car driven by Olga Rodarte, the complainant. Knapp explained
that the traffic light, which can be seen from about one-half mile from the
intersection, had been red for at least five to seven seconds prior to the collision and
that he saw vehicles begin to enter the intersection going westbound on FM 2004. 
Knapp stated that the speed limit on Highway 288 is 50 miles per hour, but the limit
drops to 45 miles per hour 1,000 feet before the intersection at FM 2004. He noted
that it was a clear day, the roads were dry, and there are warning signs informing
drivers that they are approaching this intersection. He explained that there were no
obstructions blocking the road or the ability of drivers to see down the road, and,
although there was a ten mile-per-hour wind, the traffic signal could be clearly seen
even though the wind moved the lights. The Durango was the only northbound
vehicle that Knapp saw enter the intersection. 
          Noel Velasquez, also a truck driver, testified that at that same time, he was
traveling westbound on FM 2004 at Highway 288. He stopped his truck, right beside
the complainant’s westbound Pontiac Sunfire, at the red light in the left turn lane of
FM 2004. Velasquez explained that his “tall truck” was positioned in such a way that
it blocked the complainant’s view of oncoming northbound traffic on Highway 288. 
Velasquez waited approximately 30 seconds at the traffic signal of the intersection. 
When the traffic signal light turned green, Velasquez drove out into the intersection
but stopped when he saw appellant’s Durango approaching so fast that he didn’t have
“time to put the brakes on it.” The complainant, unaware of appellant’s oncoming
Durango, “[took] off. . . normally,” and the Durango collided with the complainant’s
car in the middle of the intersection. Appellant’s Durango “never slowed down.” 
Velasquez estimated appellant’s speed at the time of the collision to be between 60
and 70 miles per hour. Velasquez explained that no one else entered the intersection. 
After the collision, appellant told Velasquez that he was in a hurry to go to the
courthouse and asked Velasquez if he had run a red light. 
          Alice Hodge testified that she was traveling south on Highway 288 at the time,
in the opposite direction of appellant. As she approached the intersection, her
southbound traffic light was red. After she had been stopped at the red light for two
to three seconds, the collision occurred. Hodge testified that after the collision,
appellant asked her if the light was red. 
          Paul Borel testified that at the time of the collision, he was stopped at the red
light at FM 2004, directly behind the complainant’s white car. When the light turned
green, the complainant’s car moved forward and was hit and lifted airborne by
appellant’s Durango. Borel heard no skidding tires before the collision. Immediately
after the collision, Borel attended to the complainant and determined that she was
dead. Appellant asked Borel if appellant had run a red light. Borel explained that
appellant did not state that he could not see the lights because of wind nor did he say
he was trying to set his cruise control. Borel heard appellant ask another witness on
the scene to tell the police officers that the wind was blowing the lights. 
          Ashley Hempel, an officer with the Richwood Police Department, testified that
she was dispatched to the intersection of FM 2004 and Highway 288 shortly after the
collision. She explained that, on the northbound side of Highway 288, 744 feet from
the FM 2004 intersection, there is a yellow diamond sign with a traffic signal symbol
that warns drivers of the coming controlled intersection.
          Bobby Evans, a traffic systems supervisor for the Texas Department of
Transportation, testified that his agency maintains the traffic signals at FM 2004 and
Highway 288. He noted that no malfunctions were reported to his agency and that
the signal was working properly on the day after the collision. Evans explained that
there is a 1.5 second “clearance time” when the lights to conflicting lanes of travel are
both red before one of the signals turns green. The amber, or yellow, light lasts for
5 seconds. 
          Cathryn Caraway, appellant’s administrative secretary, testified that on April
9, 2003, appellant was late to an appointment with a judge regarding his daughter
because he had gone to the wrong location. Appellant called Caraway to ask her to
inform the judge that he had been in an accident. After calling the judge, Caraway
met appellant at the scene. At the scene, appellant advised her that he was setting his
cruise control at the time of the collision and was driving between 50 and 55 miles
per hour. Appellant also told her that the wind was blowing the lights horizontally
and that someone else had gone through the intersection with him. She explained that
appellant was familiar with this intersection because he owned property in the area. 

 
Legal and Factual Sufficiency
          In his first and second points of error, appellant argues that the evidence was
legally and factually insufficient to support his conviction of criminally negligent
homicide because the State failed to prove, beyond a reasonable doubt, that
“appellant’s failure to perceive the risk constituted a gross deviation from the
ordinary standard of care.” We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not re-weigh the evidence and substitute our
judgment for that of the fact finder. Id. 
          In our review of the factual sufficiency of evidence, we view all of the evidence
neutrally, not in the light most favorable to the verdict, and we will set aside the
verdict “only if the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or the contrary evidence is so strong that the standard of proof
beyond a reasonable doubt could not have been met.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 483 (Tex.
Crim. App. 2004)). Although our analysis considers all the evidence presented at
trial, the trier of fact is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given their testimony. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). For purposes of our factual sufficiency review, we note
that appellant offered no evidence during the guilt phase of the trial. 
          A person commits the offense of criminally negligent homicide if he causes the
death of an individual by criminal negligence. Tex. Pen. Code Ann. § 19.05(a). 
(Vernon 2003). The culpable mental state required for a conviction of criminally
negligent homicide is defined as follows: 
A person acts with criminal negligence, or is criminally negligent,
with respect to circumstances surrounding his conduct or the result of
his conduct when he ought to be aware of a substantial and unjustifiable
risk that the circumstances exist or the result will occur. The risk must
be of such a nature and degree that the failure to perceive it constitutes
a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor’s
standpoint. 
 
Tex. Pen. Code Ann. § 6.03(d) (Vernon 2003). Criminal negligence involves
inattentive risk creation, that is, the actor ought to be aware of the risk surrounding
his conduct or the results thereof. Lugo v. State, 667 S.W.2d 144, 147–48 (Tex. Crim.
App. 1984); Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). The
essence of criminal negligence is the failure of the actor to perceive the risk created
by his conduct. Ybarra v. State, 890 S.W.2d 98, 110 (Tex. App.—San Antonio 1994,
pet. ref’d). Proof of a culpable mental state generally relies upon circumstantial
evidence. Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). The issue of
whether criminal negligence is shown, that is, whether one should be aware of a
requisite risk, is a conclusion to be drawn through inference from all the
circumstances by the trier of fact. Id.
          It is uncontroverted that the appellant caused the death of the complainant. 
However, appellant asserts that “the evidence [in this case] establishes a traffic
accident, nothing more.” Appellant argues that his two lapses of inattention, (1) in
not seeing the light change or, if he looked, in being unable to see it change due to the
wind, and (2) in exceeding the speed limit, do not establish a gross deviation from the
ordinary standard of care because “every driver on our highways is distracted at one
time or another.” Appellant asserts that “[his] speed as estimated by the witnesses
was not grossly in excess of the speed limit for this highway and that his lapse of
attention to the red light was not sufficient to rise above the normal lapses incurred
by ‘ordinary’ drivers.” Appellant further asserts that “[he] did not see complainant’s
vehicle” and “although his inattention undoubtedly constitutes negligence, the
evidence is insufficient to establish criminal negligence in that it fails to establish a
‘gross deviation’ from the ordinary standard of care.” 
          Initially, we note that “accident” is not a defense to negligent homicide. Sykes
v. State, 399 S.W.2d 349, 352 (Tex. Crim. App. 1966). While it may be true that “if
no death had occurred, appellant may have been ticketed and nothing more,” it is the
death of an individual which compels an analysis of appellant’s actions to determine
if his conduct constituted a gross deviation from the ordinary standard of care that an
ordinary person, in appellant’s place, would exercise. 
          The evidence at trial showed that appellant, traveling northbound, caused his
Durango to collide with the complainant’s car in the intersection of FM 2004 and
Highway 288. The traffic signal at the intersection had been red for northbound
traffic between two to seven seconds when appellant entered the intersection. There
would have also been five seconds of a yellow or amber signal prior to the traffic
light turning red. Although the speed limit at the intersection is 45 miles per hour,
appellant’s speed was estimated to be between 60 and 70 miles per hour. Knapp
testified that appellant was approaching the intersection at such a “high rate of speed”
that “even if [appellant had] put on the brakes [he did not] think [appellant] would
have got stopped.” The evidence also showed that the traffic light at the intersection
was visible from about one-half mile away and that there was a sign warning drivers
of the traffic signal at the intersection. 
          The State also presented evidence that appellant’s Durango was the only
vehicle that entered the intersection. Appellant told Vasquez that he was in a hurry
to go to the courthouse and asked several of the witnesses whether he had run a red
light. No brake lights or skidding was observed by any of the witnesses prior to the
collision. Appellant was familiar with the road and the traffic signal because he had
owned property in the area. Although appellant asserted at the scene that he had
trouble seeing the traffic signal lights because of the wind, several of the State’s
witnesses contradicted appellant’s account and testified that the wind was not
blowing so hard that the lights were affected. The evidence showed that appellant
had good driving conditions, with dry pavement and clear visibility. 
          We also note that although appellant asserts that his actions constituted a lapse
of attention that did not rise to the level of a “gross deviation” from the ordinary
standard of care, the Court of Criminal Appeals has explained that if the inference
that a particular individual on trial was aware of the risk is reasonable, it is for the
trier of fact to determine which circumstances to accept as proven and whether to
draw that inference, and it is not for an appellate court to overturn such an inference,
drawn on the whole of circumstances. Dillon, 574 S.W.2d at 94. 
          Here, appellant, who was familiar with the particular section of road, traveled
15–25 miles per hour in excess of the speed limit, failed to slow down as he
approached the intersection, ran a red light, and failed to keep a proper lookout so as
to apply his brakes before striking a vehicle in the intersection. We conclude that a
rational trier of fact could infer from the evidence that an ordinary or reasonably
prudent person ought to have been aware that a substantial and unjustifiable risk was
created and that appellant’s failure to perceive the risk constituted a gross deviation
from the ordinary standard of care. See Tex. Pen. Code Ann. § 6.03(d). 
Accordingly, we hold that the evidence was legally sufficient to establish the culpable
mental state of criminal negligence. See Lopez v. State, 630 S.W.2d 936, 941 (Tex.
Crim. App.1982) (holding evidence was legally sufficient to support finding of
criminal negligence where defendant exceeded speed limit and ran red light on a city
thoroughfare at 11:30 p.m.); Brown v. State, 773 S.W.2d 65, 67 (Tex. App.—Fort
Worth 1989, pet. ref’d) (holding evidence was legally sufficient to support finding
of criminal negligence where defendant was driving at high rate of speed, failed to
slow down as he approached intersection and failed to watch traffic light); Thompson
v. State, 676 S.W.2d 173, 178 (Tex. App.—Houston [14th Dist.] 1984, no pet.)
(holding evidence was legally sufficient to support finding of criminal negligence
where defendant drove her car at excessive rate of speed in residential neighborhood
near bus stop at time of early morning when children normally would be on their way
to school). 
          In regard to appellant’s argument that the evidence is factually insufficient to
support the jury’s finding that his failure to perceive the risk constituted a gross
deviation from the ordinary standard of care, appellant again asserts that his “lapse
of attention to the red light was not sufficient to rise above the normal lapses incurred
by ‘ordinary’ drivers.” However, viewing the above outlined evidence neutrally, we
cannot conclude that the evidence in support of the finding is so weak that the verdict
is clearly wrong or manifestly unjust. Nor can we conclude that any contrary
evidence is so strong that the standard of proof beyond a reasonable doubt could not
have been met. Accordingly, we hold that the evidence was factually sufficient to
establish the culpable mental state of criminal negligence.
          We overrule appellant’s first and second points of error.HearsayIn his third point of error, appellant contends that the trial court erred in
admitting, during the punishment phase of trial, the hearsay testimony of a police
officer about an extraneous bad act. The officer testified that he had previously been 
dispatched to a “burglary” of appellant’s apartment and that appellant had barricaded
himself in his apartment. Appellant asserts that the officer should not have been
permitted to relate historical aspects of the extraneous matter beyond explaining that
the officer had been dispatched to appellant’s apartment. 
          Hearsay is defined as “a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the matter
asserted.” Tex. R. Evid. 801(d) (Vernon 2003). Here, the testimony elicited from the
officer was not for the purpose of proving the truth of the matter within the statement,
but rather to show why the officer went to appellant’s apartment. The truth of
whether or not a burglary had in fact taken place at appellant’s apartment was not in
issue. Where information is offered for a reason other than to prove the truth of the
statement, the evidence is not inadmissible hearsay. Martinez v. State, 22 S.W.3d
504, 508 (Tex. Crim. App. 2000). Furthermore, it was permissible for the State to
show the officer was present in response to information received. Shaffer v. State,
777 S.W.2d 111, 114 (Tex. Crim. App. 1989); see also Black v. State, 503 S.W.2d
554, 557 (Tex. Crim. App. 1974) (finding no error for trial court to permit officer to
testify only that he had heard general broadcast over the police radio about robbery). 
Accordingly, we hold that the trial court did not err in allowing the officer to testify
that he had been dispatched to appellant’s residence in response to a burglary. 
          We overrule appellant’s third issue.
 
 
 
Conclusion
          We affirm the judgment of the trial court.



                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.
Do not publish. Tex. R. App. P. 47.2(b).