

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00203-CR
_____

DECRICK DEMOND STEPHENS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st Judicial District Court
Harrison County, Texas
Trial Court No. 07-0189X

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

A jury found Decrick Demond Stephens guilty of possession of cocaine in an amount greater than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (c) (Vernon 2003). Stephens and the State reached an agreed recommendation regarding punishment (four years' imprisonment), which the trial court accepted and imposed in this case. Stephens now appeals, challenging the legal and factual sufficiency of the evidence to support the jury's guilty verdict. We overrule both challenges and affirm the trial court's judgment.

In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).

Under either sufficiency standard, it is unnecessary for the State's evidence to exclude every other possible hypothesis but that of the accused's guilt, as long as there are sufficient links to connect the accused to the crime. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995);

*Benson v. State*, 240 S.W.3d 478, 482 (Tex. App.—Eastland 2007, pet. ref'd); *Harris v. State*, 133 S.W.3d 760, 764–65 (Tex. App.—Texarkana 2004, pet. ref'd). Such links include whether

> (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself or herself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances.

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Lassaint v. State*, 79 S.W.3d 736, 740–41 (Tex. App.—Corpus Christi 2002, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31–32 (Tex. App.—Texarkana 1997, no pet.)). It is the logical force of such links, rather than mere quantity, that is important in determining whether the evidence is sufficient to connect the accused to the alleged contraband or crime. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

The indictment alleged Stephens "[i]ntentionally and knowingly possess[ed] a controlled substance listed in Penalty Group 1 of the Texas Controlled Substances Act, namely, cocaine, in an amount of one gram or more but less than four grams, including any adulterants and dilutants . . . ." A person commits the crime of possession of a controlled substance "if the person knowingly or

intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). Cocaine is a Penalty Group 1 controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(D) (Vernon Supp. 2007). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). "Because it is difficult to prove what a defendant was thinking, intent of the accused is not ordinarily determined by direct proof; rather, it is inferred from circumstantial evidence." *Morris v. State*, 892 S.W.2d 205, 207 (Tex. App.—Texarkana 1994, no pet.) (citing *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Salisburg v. State*, 867 S.W.2d 894 (Tex. App.—Houston [14th Dist.] 1993, no pet.)). "Intent may be inferred from acts, words, or conduct of an accused, including the circumstances surrounding the acts in which the accused engages." *Morris*, 892 S.W.2d at 207 (citing *Salisburg*, 867 S.W.2d at 894).

Doug Smith (hereinafter D. Smith), an officer with the Marshall Police Department, testified he was working during the overnight shift September 13, 2006. While patrolling the streets of Marshall, D. Smith observed the appellant, Stephens, driving eastbound in his vehicle on West

4

Houston Street near Acorn Street. D. Smith noticed Stephens' vehicle did not have a front license plate. *See* TEX. TRANSP. CODE ANN. § 502.404(a) (Vernon Supp. 2007) (person commits criminal offense by operating on public highway motor vehicle registered in Texas that lacks either front or rear license plate). D. Smith also noticed that the temporary registration tag for Stephens' vehicle had expired. *See* TEX. TRANSP. CODE ANN. § 502.002 (Vernon 2007) (requiring registration); § 502.407(a) (Vernon Supp. 2007) (criminalizing driving with expired registration). D. Smith then began making a traffic stop of Stephens' vehicle for the observed violations. *Cf. Coleman v. State*, 45 S.W.3d 175, 179 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (officer may stop and detain driver for observed traffic violation). After D. Smith turned on the overhead lights to his patrol car, he saw a white object or a white bundle being thrown out of the driver's side window and onto the street. D. Smith then radioed other police officers, asking that they search the location where D. Smith had seen a white object being thrown from Stephens' car.

Once D. Smith made contact with Stephens' vehicle and its occupants, the officer asked Stephens what he had thrown from his vehicle. Stephens replied that he had discarded nothing from the car, but a female in the backseat answered that she had thrown a tampon out of the car. D. Smith later learned from that female passenger that the back window of Stephens' car did not roll down, a claim that D. Smith himself later verified.

Meanwhile, Officers Larry Smith (hereinafter L. Smith) and Jason Mobley of the Marshall Police Department had gone to the above-referenced suspected location and found drugs abandoned

5

on the street where D. Smith had suggested they search. D. Smith then confronted Stephens and his two passengers about the suspected narcotics, narcotics that the officer later identified as eight or more rocks of crack cocaine. The drugs had been wrapped inside the same white bag the officer had seen being thrown from Stephens' car earlier.

During this confrontation, and after reading *Miranda*[1] warnings to the occupants of the vehicle, D. Smith observed one of those passengers, William Jones, "making motions with his eyes toward Mr. Stephens." D. Smith interpreted such movements as a nonvocal suggestion by Jones to D. Smith that Stephens was the person who had been in possession of the drugs. Eventually, D. Smith arrested Stephens and placed him in the back of Mobley's police car. Once that was done, two of the remaining suspects (Jones and Willie Brown) began telling the officers about the suspected drugs.

A subsequent search of Stephens' vehicle uncovered marihuana residue and a soda can with a false bottom that D. Smith said could be used to conceal narcotics. D. Smith testified that the total quantity of cocaine recovered weighed 2.4 grams. On cross-examination, however, the officer was forced to admit that he had not returned along Stephens' previous travel route to make sure there were no discarded tampons; he nevertheless reiterated that the assisting officers found only narcotics—not feminine products—at the exact site where D. Smith had seen the white object thrown from Stephens' car.

---

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

Jones testified second for the State. A disabled army veteran, Jones admitted to the jury that he had previously spent two years in state jail for possession of drugs. He then told the jury that he was sitting in the front passenger seat of Stephens' car on the night of September 13, 2006. Jones testified that, when the police car turned on its overhead lights that evening, Jones saw something white, measuring approximately the size of one's fist, be thrown out of the driver's side window by someone, which Jones assumed was Stephens. Jones also testified that the object he had seen thrown out of Stephens' car window looked similar to the white bagged item retrieved by officers L. Smith and Mobley and brought to the scene of Stephens' arrest.

The State's next witness, Officer L. Smith, was working on the evening of September 13, 2006. He was riding in the police car being driven by rookie officer Jason Mobley when the two received a call from D. Smith asking them to search the intersection of Houston and Acorn Streets in Marshall for suspected narcotics inside a white package that had been thrown out of a car window. L. Smith and Mobley went to the intersection, conducted a search of that area, and found "a white plastic bag tied up in a knot" on the northern side of West Houston Street. They saw no other white objects in the area; and while they saw other off-white objects in the area, L. Smith testified that it was obvious those objects had been outside and exposed to the weather for some time—which was not the case for the white bag tied up in a knot. L. Smith and Mobley then took the white plastic bag (and its unwrapped contents) to D. Smith.

Melissa Brooke Harrison is a forensic chemist for the Texas Department of Public Safety's crime laboratory in Tyler. Harrison testified that she analyzed a sample of suspected narcotics submitted by the Marshall Police Department in connection with this case; that analysis revealed the suspected narcotics contained cocaine and weighed over two grams.

Reid McCain is a veteran officer with the Marshall Police Department and has several years worth of experience in processing and comparing latent fingerprints. McCain testified he was unable to find any fingerprints on the white plastic bag admitted into evidence in this case, but McCain told the jury he was unsurprised by that result because plastic surfaces (such as a bag) often wrinkle—thereby distorting any features that might be left in a latent fingerprint.

Stephens presented no evidence or testimony in his defense.

Following the appropriate standards of review, we conclude the evidence was legally and factually sufficient to support the jury's verdict that Stephens intentionally or knowingly possessed more than one gram, but less than four grams, of cocaine. Many direct and indirect connections tied Stephens to the cocaine at issue in this case. First, the drugs were quickly found by officers in the exact location where D. Smith had seen them thrown from the car's driver's side window. Second, Stephens was the owner of the vehicle from which the drugs had been thrown. Third, the cocaine had, just before being discarded, obviously been in close proximity to Stephens. Fourth, Stephens' vehicle had evidence of other drugs and drug use inside it. Fifth, Officer D. Smith had previously testified about having seen Stephens acting suspiciously on other occasions. (He told the jury he had

8

recently, and on more than one occasion, seen Stephens intentionally avoid encountering the police by pulling off a public street or highway so as to prevent being detained for any possible traffic violations.) Sixth, one of Stephens' passengers told police that the narcotics belonged to Stephens. And, finally, there was a significant quantity of cocaine found.

While one could possibly conclude from the testimony and evidence either that perhaps a backseat passenger in Stephens' car possessed and discarded the narcotics in question or that the white package actually discarded was a different item than that ultimately discovered and seized by police, there was also substantial evidence from which the jury could infer it was, in fact, Stephens who possessed the cocaine. And we believe that ultimate conclusion was not an unreasonable or manifestly unjust deduction from all the evidence presented. Accordingly, we overrule Stephens' challenges to the legal and factual sufficiency of the evidence.

We affirm the trial court's judgment.


Jack Carter
Justice


Date Submitted: April 2, 2008
Date Decided: May 20, 2008

Do Not Publish

9