

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00233-CR

**SAM FELDER, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the County Court at Law No. 2
### Ellis County, Texas
### Trial Court No. 1312047CR

## MEMORANDUM  OPINION

A jury convicted Appellant Sam Felder, Jr. of theft of property valued at $500 or more but less than $1,500 and assessed his punishment at 365 days' confinement in the Ellis County Jail and a $4,000 fine.  This appeal ensued.  In his sole issue, Felder contends that the evidence is legally and factually insufficient to support his conviction.

The Court of Criminal Appeals has overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) and factual-sufficiency review.  *See Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).  The court held that the *Jackson v. Virginia* legal-

sufficiency standard is the only standard a reviewing court should apply in determining the sufficiency of the evidence. *Id.*

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326; 99 S.Ct. at 2793. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2014). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b). The offense is a Class A misdemeanor if the value of the property stolen is $500 or more but less than $1,500. *Id.* § 31.03(e)(3).

The following evidence was presented at trial: Kirsten Minderman testified that she was working with asset protection at the Walmart in Waxahachie on June 7, 2013 when she encountered Felder on the sales floor. Her suspicions were raised because he had large "walk out push out" items (big bulky items that could not be bagged) in his shopping "buggy." She had also seen Felder on the previous Saturday in the girl's department with a shopping buggy full of clothes. She alerted her supervisor, the asset protection manager, and followed Felder to the garden center. Her supervisor met her there, and she pointed Felder out to him.

Felder approached the garden-center cashier, and the cashier began ringing up the items in his shopping buggy in "item inquiry mode," which checks the price on an item without charging for it. Minderman, a former cashier, knew what the cashier was doing because the register makes a different sound when checking a price, but Minderman acknowledged that a customer who was not a cashier or former cashier might assume that the items were being scanned. The cashier did not scan some of the items at all; the cashier folded some of the clothing items and put them in a bag. The diapers were also not in Felder's shopping buggy when he approached the cashier. The cashier grabbed them from the top of a Coke machine by the registers in the garden center.

Minderman was watching from two aisles away and saw Felder with cash in his hand. He gave the cashier two bills, one of them being a twenty-dollar bill. As a former cashier, Minderman knew Felder paid with a twenty-dollar bill because the cashier put the bill in the "twenty dollar till"; one hundred- and fifty-dollar bills are placed underneath the till. The cashier gave back the other bill Felder had given her. Minderman did not see the cashier place anything in her pockets. The cashier printed and gave Felder a receipt. Felder folded it over and put it into his pocket. He then pushed the buggy past the last point of sale, past the doors, and into the garden center patio.

Minderman's supervisor and assistant manager apprehended Felder. They asked to see his receipt, and he provided it. The receipt showed that Felder paid $11.33 with taxes and $10.47 without taxes. The receipt showed that Felder tendered $15 to the cashier. Minderman testified that the register was audited after the incident and did not come up short. She did not know if the register was "over." A receipt later generated by ringing up all the merchandise showed a total value of $584.13 without taxes and $632.32 with taxes. The merchandise included clothes, a microwave, a TV stand, a box of diapers, and a window air conditioner. Felder's receipt showed that he had only paid for some clothing, and even those items were entered at a price lower than the actual price. Minderman said that she does not believe that Felder thought that he had paid for all of the items and that Felder did not have Walmart's permission to take the items without paying for them.

Felder appears to argue that the evidence is insufficient to show that he knew that he had not paid for the items in his shopping buggy. We disagree. A culpable mental

state is invariably proved by circumstantial evidence. *Giddens v. State,* 256 S.W.3d 426, 434 (Tex. App.—Waco 2008, pet. ref'd); *see Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). The jury may infer intent from any facts in evidence that the jury determines prove the existence of an intent. *Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). The issue on appeal is not one of theoretical possibility, but whether, under the circumstantial evidence, it is reasonable to infer that the defendant had the requisite culpable mental state. *See Dillon,* 574 S.W.2d at 95; *see also Hooper,* 214 S.W.3d at 14.

Here, Felder's receipt showed that he paid $11.33 with taxes and $10.47 without taxes for merchandise with a total value of $584.13 without taxes and $632.32 with taxes. The evidence also shows that the cashier added an item that she had been holding—the diapers—to the shopping buggy for Felder to take with him along with the other items for which she failed to charge him. We believe that the jury could have reasonably inferred from the evidence that Felder intended to take the merchandise without payment and without Walmart's effective consent and that the cashier was acting in concert with Felder to facilitate his theft.

Felder also argues that the evidence is insufficient because Minderman's testimony "is filled with gaps and inconsistencies," but the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A jury may believe all, some, or none of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). By finding Felder guilty, the jury obviously believed Minderman's testimony. As the reviewing court, we "should not substantially

intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

We conclude that the evidence is sufficient to support Felder's conviction for theft of property valued at $500 or more but less than $1,500 beyond a reasonable doubt. Felder's sole issue is overruled, and the trial court's judgment is affirmed.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 20, 2015
Do not publish
[CR25]

