

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00119-CR

**MICHELLE LOUISE CAMPBELL,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 66th District Court
### Hill County, Texas
### Trial Court No. 38,027

## MEMORANDUM  OPINION

A jury found Appellant Michelle Campbell guilty of burglary of a building; the charge contained a law of parties instruction and an instruction on the defense of mistake of fact.  The trial court sentenced her to two years in state jail, probated for five years. Campbell appeals, asserting in two issues that the evidence is insufficient on her intent to commit theft and that no rational juror could have found against her mistake-of-fact defense that she had permission to enter the building and take property.  We will affirm.

The Court of Criminal Appeals has expressed our standard of review of a

sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13.

> Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. . . . .

> [C]ourts of appeals should adhere to the *Jackson* standard and

determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Id.* at 15-17. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A culpable mental state is invariably proved by circumstantial evidence. *Giddens v. State,* 256 S.W.3d 426, 434 (Tex. App.—Waco 2008, pet. ref'd); *see Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). The jury may infer intent from any facts in evidence that the jury determines prove the existence of an intent. *Brown v. State,* 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). The issue on appeal is not one of theoretical possibility, but whether, under the circumstantial evidence, it is reasonable to infer that the defendant had the requisite culpable mental state. *See Dillon,* 574 S.W.2d at 95; *see also Hooper,* 214 S.W.3d at 14.

A defendant has the burden of producing some evidence to support a defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Smith v. State*, 352 S.W.3d 55, 62 (Tex. App.—Fort Worth 2011, no pet.). After the defendant has introduced some evidence of a defense, the State bears the burden of persuasion to disprove it. *Zuliani*, 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991); *Smith*, 352 S.W.3d at 62. This burden does not require the State to produce evidence disproving the defense; it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913; *Smith*, 352 S.W.3d at 62. To determine the legal sufficiency of the evidence to disprove the defense, the appellate court asks whether,

after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against the appellant on the defensive issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914; *Smith*, 352 S.W.3d at 62.

The mistake-of-fact defense is codified at Texas Penal Code Section 8.02, which provides

> It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

TEX. PENAL CODE ANN. § 8.02(a) (West 2011). A "reasonable belief" is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id*. § 1.07(a)(42). The mistaken belief must "'negate[] the kind of culpability required for the commission of the offense.'" *Ingram v. State*, 261 S.W.3d 749, 753 (Tex. App.—Tyler 2008, no pet.). The phrase, "kind of culpability" means "culpable mental state." *Beggs v. State*, 597 S.W.2d 375, 377-78 (Tex. Crim. App. 1980). When an accused presents evidence to raise the issue of mistaken belief as to a culpable mental element of the offense, he is entitled to a defensive instruction on mistake of fact. *Granger v. State*, 3 S.W.3d 36, 41 (Tex. Crim. App. 1999). *See Celis v. State*, [416 S.W.3d 419, 430 (Tex. Crim. App. 2013)].

Pursuant to section 30.02(a)(3), as charged in this indictment, a person commits burglary "if, without the effective consent of the owner, the person: [] enters a building or habitation and commits or attempts to commit … theft…." TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id*. § 31.03(a) (West Supp. 2012). The State must prove both entry of the habitation without permission of the owner and the commission of a theft or acts constituting an attempt to commit theft. TEX. PENAL CODE ANN. §§ 30.02(a)(3), 31.03(a) (West 2011 & Supp. 2012); *see Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995); *Rangel v. State*, 179 S.W.3d 64, 73 (Tex. App.—San Antonio 2005, pet. ref'd). In this situation, the gravamen of the offense of burglary is entry of a building or habitation without the effective consent of the owner accompanied by the further requisite acts or omissions under section 30.02(a)(3). *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988).

*Reyes v. State,* 422 S.W.3d 18, 28 (Tex. App.—Waco 2013, pet. ref'd).

Jimmie Chatham testified that he lived at the home in question (120 Tobacco Road) in 2011 with his daughter, her fiancé, and their children; they had been living there for two years and he moved in to help them with expenses and lived there for almost a year. He actually lived in an apartment that was connected to the house, which was owned by the fiancé's mother. A friend of Chatham's daughter and fiancé moved in but caused a bed-bug infestation in the home. As a result, when Chatham and his daughter's family were asked to move out, they left a lot of property (such as electronics, furniture, tattoo equipment, and household items) behind and took it out a little at a time because they had to de-bug everything. Chatham checked on the house every three days to make sure everything was okay.

On March 21, 2012, while at his new residence, Chatham saw a pickup truck drive by, and it had speakers that were just like his that he had left at the 120 Tobacco Road house. The truck was loaded with a lot of other things. Suspicious, he went to the house to check on his property, and he found a car in the driveway and the door to his apartment open. The day before he had checked on the house and it was locked and looked normal. A no-trespassing sign was posted at the front of the house next to the mailbox.

Chatham saw that the doors were kicked in and then found four persons there who were in the process of taking things out of the house. Chatham told them that he was the owner and that they were stealing his "stuff." Chatham further testified:

> And they pleaded with me and told me that there was another

person involved that took all the stuff, and if I'd let them go, they would let me know who it was and - - you know, if I let them go, they'd let me know who it was. And my deal was if … they were going to tell anybody who it was, it was going to be the authorities. And I actually told them to stay there. I lived a block away. I actually told them to stay there while I got my gun.

Chatham identified Campbell as one of the four persons, and the other three were Campbell's two sons and a young girl who was the girlfriend of one of the sons. Campbell's children told Chatham that Campbell was their mother. It was the girl who first told Chatham that she would tell him who had taken his property if he let them go, and Campbell's older son later said the same to Chatham. Chatham took the girl's phone so that they would not leave, retrieved his gun from his new residence and had his "missus" call the police, and then returned to the house.

When Chatham had first arrived, the three other than Campbell had come out; Campbell was in one of the bedrooms and was reluctant to come out. He told her sons to ask her to come out, and she pleaded with Chatham "not to call the law." Eventually she came out, but she was not holding any property when Chatham first saw her; he added that she knew he was there before she came out. Chatham saw the two boys holding property, and property had been placed outside. Much of his property was missing, including his speakers.

Chatham denied that the house was open to the public or that he had given anyone, including the four persons, consent to go in the house and take things. Also, no one else in his family had given anyone consent to go in the house and take things. After the police had arrived, Campbell's mother arrived and said that it was her fault because

she had told Campbell that it was okay to go in the house.

Shane Brassell, a Hill County Sheriff's Deputy, testified that he was dispatched to a burglary in progress and that the owner was holding the people at gunpoint. He went to the Tobacco Road residence and found Chatham and the four individuals outside the residence. Chatham pointed out to Brassell the items that several of the four were holding when he had arrived.

Campbell's car was parked behind the residence and could not be seen from the road. There was a fence around the front of the residence and a no-trespassing sign. Brassell secured Chatham's gun and then questioned the four. Brassell testified that Campbell told her that her mother had given her permission to go in the house, but from his investigation, Campbell's mother had no authority over that house. Brassell did not find any stolen property in Campbell's car. He described Campbell as distraught.

Michala Nichols, who was the girlfriend of one of Campbell's sons, said that she first went to the house the day before with Eloise Nunn, Campbell's mother, to help her take "stuff" out of the house. The door was wide open when they arrived. A few other people were there also taking things. Nichols returned the next day with Campbell and her two sons; she said that Nunn had told Campbell that she had permission to go in the house and take things from a man named Larry. Nichols admitted that neither Chatham nor the owner of the house had given them consent to go in the house.

After about five minutes of being there on the second day, Chatham arrived. She told Chatham that if he would not press charges, she would take him to where his property was. At the time of trial, Nichols was on probation for burglarizing the house.

The defense called Nunn, who testified that when she driving on Tobacco Road, near the house, she almost had a collision with a white pickup coming out of the driveway. They both stopped, as things had fallen out of the pickup; the back of it was full of "furniture and stuff." The driver, who said his name was Larry, told Nunn that he was moving out of the house and that there was still "stuff" in it that Nunn was "welcome to." Nunn said that she did not know Larry or ever discover who he was. Later that day she went to the house with her grandson Thomas and his girlfriend (Nichols); the door was open, but Nunn admitted that there was a no-trespassing sign. She also did not know who owned the house or who had been renting it. Nunn said that she took only a pair of glasses. Her grandson Thomas went to jail for the offense; he and Nichols took responsibility for what they did.

Nunn told Campbell that it was all right for her to go in the house. Nunn went there the next day after being called about Chatham holding the four at gunpoint, and she told him that Larry had told her they could go in the house and take things. According to Nunn, Chatham's reaction indicated to her that he knew who Larry was.

In rebuttal, the State called Chatham, who testified that he did not know Larry or give anyone named Larry permission to take property from the house, nor did he give anyone such consent.

Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Campbell committed the offense of burglary of a building beyond a reasonable doubt. We overrule issue one.

By finding Campbell guilty, the jury rejected her mistake-of-fact defense. Campbell's car was found parked behind the house where it could not be seen from the road, and Campbell was reluctant to come out when Chatham arrived. One of the parties to the offense told Chatham that she would tell him where his property was if he would let them go. There was a no-trespassing sign in front of the house, and a rational jury could have disbelieved the testimony of Nunn, Campbell's mother, that a total stranger named Larry told her that she could go in the house and take whatever she wanted.

In conclusion, a rational trier of fact could have disbelieved that Campbell acted under a mistaken belief or could have concluded that the alleged belief was reasonable. We overrule issue two. The trial court's judgment is affirmed.


                                    REX D. DAVIS
                                    Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed July 23, 2015
Do not publish
[CR25]

